[No. 22243-1-I.   Division One.   June 12, 1989.]

THE TOLL BRIDGE AUTHORITY, *Appellant,* v. AETNA INSURANCE CO., ET AL, *Respondents.*

*Kenneth O. Eikenberry, Attorney General,* and *Delbert W. Johnson, Assistant,* for appellant.

*William Olson* and *Aiken, St. Louis & Siljeg,* for respondents.

SCHOLFIELD, J.—The plaintiff, Washington State Toll Bridge Authority (TBA), appeals the judgment in favor of Aetna Insurance Company (Aetna) and Insurance Company of North America (INA) in its action against Aetna and INA to obtain indemnity for amounts paid to three ferry passengers for injuries sustained while disembarking from the M/V *Quinault.* We affirm.

## FACTS

TBA is engaged in the operation, maintenance, and use of a fleet of vessels and owns numerous dock facilities to carry on its ferry business. On August 19, 1974, TBA's ferry M/V *Quinault* arrived at the Fauntleroy ferry terminal. The dock facilities at that terminal provided a single ramp for ingress and egress by both vehicles and foot passengers. After the vessel was secured, the safety line was dropped and the passengers who had assembled on the bow started walking up the ramp.

Unloading was under direction of First Mate Clyde Murray, assisted by two or more crew members. The first vehicle in line had been blocked by a 6–inch block under the front tire to prevent movement. The driver of that vehicle started and raced her engine at a high r.p.m. Foot passengers were still on the ramp. Murray started toward the car and signaled the driver to stop. He saw the driver put the car in gear, and he yelled at her, trying to get her to stop. The car jumped the block and sped up the ramp and onto the dock, striking and injuring four foot passengers who were in various locations along the ramp.

Passengers Jay Lillquist, Joanie Noll, and Kaiso Eng filed lawsuits against TBA, and the defenses of each claim were tendered to Aetna and INA. The claims of Noll and

Eng were settled prior to trial for $33,000 each. Aetna contributed one–third ($11,000 for each claimant), TBA paid one–third ($11,000 each claimant), and the insurer for the driver of the auto paid one–third ($11,000 each claimant). The claim of Jay Lillquist went to trial on the issue of liability in early 1977. It was tried to a jury in King County Superior Court. Lillquist contended that TBA was negligent in the following particulars:

1. In failing to prohibit automobile drivers on the ferry from starting their car motors until ferry foot passengers have exited the ferry by means of walking up the unloading ramp to the protected sidewalk on the ferry dock.

2. In failing to provide a physical barrier to restrain automobiles from leaving the ferry boat until foot passengers have cleared the ramp.

3. In failing to provide a safe walkway for foot passengers extending from the ferry boat to the dock.

Instruction 2(I). The trial judge instructed the jury that TBA was a common carrier and owed the passengers "the highest degree of care". Instruction 8. She further instructed that:

Among the duties cast upon the Defendant Washington State Toll Bridge Authority, as a common carrier, is that of anticipating that a motor vehicle, driven upon the ferry, may have defective equipment, or that it may be in the control of an inattentive driver. It is the duty of a common carrier operating a ferry to protect passengers against these risks. The common carrier is charged with knowledge that automobiles may not be under adequate control as they enter, ride upon or leave from the ferry.

Instruction 10. The jury returned a general verdict, finding TBA liable for Lillquist's injuries. Subsequently, his claim was settled for $178,940. Aetna paid $76,970, and TBA paid $76,970, with the insurer for the driver of the auto paying $25,000. Payment by TBA to Eng, Noll and Lillquist was by agreement with Aetna and INA conditioned on the liability of Aetna and INA to TBA for the losses involved.

TBA purchased two separate types of insurance, fleet and terminal, for its operation of the ferry system. Its coordinated insurance program was arranged through its insurance broker, LaBow, Haynes Company, Inc. Fleet insurance is placed through a hull subscription policy, covering all of the ferry vessels and providing protection and indemnity coverage for third party liability. Hull Subscription Policy No. 453, covering the period from August 1, 1974, to August 1, 1975, is the policy applicable to this incident. A pool of insurance companies provides the indemnity protection under this policy up to an amount of $27,388,000, with a $250,000 deductible.

Terminal facilities were covered by standard form liability policies. Aetna issued a policy providing primary coverage for the period April 9, 1972, to April 9, 1975. INA provided excess coverage for the period April 9, 1974, to April 9, 1977. Endorsements were added to the Aetna policy and to the INA policy to exclude risks covered under the liability provisions of the fleet policy. The Aetna endorsement states that the policy does not apply to incidents "arising out of the operations, maintenance or use of any watercraft . . ." Similarly, the INA endorsement states that the policy does not apply to the "operation, maintenance, use, loading or unloading of any watercraft." The purpose of these endorsements is to avoid overlapping coverage because incidents arising out of the use of the ferries are covered by the fleet policy.

TBA commenced an action for indemnity and other relief against Aetna and INA. Aetna and INA sought a summary judgment ruling that the fleet policy, providing protection and indemnity coverage, applied to the loss. The trial judge granted summary judgment in favor of Aetna and INA. This appeal timely followed.

### APPLICABILITY OF EXCLUSIONARY CLAUSE

The issue in this case is whether the trial court erred in ruling as a matter of law that the accident arose out of

"operations, maintenance or use" of the vessel and therefore falls within the exclusion to the terminal policy. TBA argues that there is a material question of fact as to whether the injuries were caused by dock inadequacy or crew negligence and that resolution of this issue is necessary to a determination of whether the terminal policy applies.

On review of a summary judgment, the appellate court places itself in the position of the trial court and, considering the evidence in the light most favorable to the nonmoving party, must assess whether "the pleadings, depositions . . . and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Del Guzzi Constr. Co. v. Global Northwest Ltd.,* 105 Wn.2d 878, 882, 719 P.2d 120 (1986) (quoting CR 56(c)).

Construction of a contract and the legal effect of its terms present questions of law for the trial court which may properly be resolved by summary judgment. *Marquez v. UW,* 32 Wn. App. 302, 306, 648 P.2d 94 (1982), *cert. denied,* 460 U.S. 1013 (1983).

The Aetna endorsement provides the following exclusion:

It is further understood and agreed that such insurance as if afforded by the policy shall not apply to any claims or accidents arising out of the operations, maintenance or use of any watercraft . . .

The phrase "arising out of" is unambiguous and has a broader meaning than "caused by" or "resulted from." *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.,* 14 Wn. App. 541, 543, 543 P.2d 645 (1975), *review denied,* 87 Wn.2d 1003 (1976). It is ordinarily understood to mean "originating from", "having its origin in", "growing out of", or "flowing from". *Avemco Ins. Co. v. Mock,* 44 Wn. App. 327, 329, 721 P.2d 34 (1986).

In the present case, the accident originated on the ferry during the process of unloading passengers. Thus, we find as a matter of law that the accident "originated from",

"grew out of", or "flowed from" use or operation of the vessel. Accordingly, the Aetna exclusion applies.

Similarly, the INA endorsement provides as follows:

> This policy does not apply to the operation, maintenance, use, loading or unloading of any watercraft.

Because the accident occurred during unloading of the ferry, we find that the INA exclusion applies.

This result is supported by *Farmers Home Mut. Ins. Co. v. Insurance Co. of North Am.,* 20 Wn. App. 815, 583 P.2d 644 (1978), *review denied,* 91 Wn.2d 1014, *cert. denied,* 442 U.S. 942 (1979). In *Farmers,* a guest of the insured was injured while on the dock assisting another in disembarking from the insured's yacht, which was moored at a pier on his property. Farmers had issued a homeowner's policy covering the insured's home and premises, including the dock. INA had issued a vessel policy which provided coverage to insured for damages arising by reason of his interest in the vessel. *Farmers Home Mut. Ins. Co.,* at 817. The court found that at the time of the injuries, all parties were involved in activities necessary to leaving the yacht. Thus, the liability arose by reason of the owner's "interest" in the insured vessel and the vessel policy applied. *Farmers Home Mut. Ins. Co.,* at 820–21.

TBA argues that because the accident occurred on the ramp to the dock, there is a material issue of fact as to whether dock inadequacy or crew negligence "proximately caused" the injuries, and that summary judgment was premature in this case since the issue of proximate cause of the injuries has not yet been determined. The issue of proximate cause must be resolved by the trier of fact except in those cases where the facts are so clear, there is no room for a difference of opinion. *Graham v. Public Employees Mut. Ins. Co.,* 98 Wn.2d 533, 656 P.2d 1077 (1983). In making this argument, TBA relies upon the reasoning in *Graham* and *Safeco Ins. Co. of Am. v. Hirschmann,* 52 Wn. App. 469, 760 P.2d 969 (1988). The *Graham* case was followed by

*Villella v. Public Employees Mut. Ins. Co.,* 106 Wn.2d 806, 725 P.2d 957 (1986).

*Graham, Villella* and *Hirschmann* all involve the application and interpretation of language in homeowner's insurance policies purporting to exclude losses resulting from or caused by earth movement. In *Graham* and *Villella,* the court was faced with exclusionary language which caused the court to adopt a rule that where a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produce the result for which recovery is sought, the insured peril is regarded as the "proximate cause" of the entire loss. In so saying, the court adopted the principle that coverage would be determined by the "proximate cause" of the loss, rather than the immediate physical cause of the loss, which was formerly the rule as announced in *Bruener v. Twin City Fire Ins. Co.,* 37 Wn.2d 181, 222 P.2d 833, 23 A.L.R.2d 385 (1950).

In *Hirschmann,* the Court of Appeals was faced with exclusionary language which would have excluded coverage for any loss "caused by, resulting from, contributed to or aggravated by" any kind of earth movement. (Italics omitted.) *Hirschmann,* at 473. Following the principles announced in *Graham* and *Villella,* the Court of Appeals adopted the "efficient proximate cause" rule, stating at page 476 of the opinion:

> Where a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produce the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss.

The *Graham, Villella* and *Hirschmann* cases are not determinative here. As previously stated, the rule followed in those cases involved exclusionary language which logically raised the causation issues decided by the court.

The present case may be distinguished from *Graham* and *Hirschmann* due to the use of the "arising out of" language in the Aetna policy. To construe "arising out of" as requiring a finding of "proximate cause" before we would know whether the accident arose out of the use or operation of the vessel does violence to the plain language of the policy. "Arising out of" and "proximate cause" describe two different concepts.

The terms of an insurance policy must be construed in light of the plain, ordinary and popular meaning of the words used. *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co., supra* at 543.

A determination of proximate cause is not a necessary precedent to determination of coverage in this case.

TBA next argues that Aetna is suggesting that all activities of the ferry system involve operation, maintenance or use of watercraft and that this renders the State's annual premium a gift and nullifies the State's twofold insurance program. However, Aetna is arguing only that activities in disembarking a ferry involve operations, maintenance or use of watercraft. There are numerous terminal facility operations creating potential liability unrelated to any activity or actions of the vessel.

TBA also points out that during the State's earlier motion for partial summary judgment, Aetna's counsel told the court that there were material facts yet to be resolved. This earlier motion was denied. TBA argues that no additional facts have come to light and if a material fact concerning the proximate cause of the injuries remained to be resolved at the time of the earlier motion, then the same material fact must now remain. We find TBA's argument to be without merit. This court's determination is independent of both counsel's prior assertions and the earlier denial of a motion for partial summary judgment.

The trial court's decision is therefore affirmed.

SWANSON and WEBSTER, JJ., concur.