164 P.3d 519 (2007)
Robert NOBLE, as manager and a member of A & R Environmental Services, LLC, Washington limited liability company, Respondents,
v.
A & R ENVIRONMENTAL SERVICES, LLC, a Washington limited liability company; Tyrell Ross and Barbara Ross, husband and wife, Appellants.
No. 24980-8-III.
Court of Appeals of Washington, Division 3.
August 7, 2007.
*520 Carter Lynn Fjeld, Velikanje Halverson PC, Yakima, WA, for Appellants.
Brian J. Sunderland, Clackamas, OR, for Respondents.
SANDERS, J.[*]
¶ 1 In 1999, Tyrell Ross and Robert Noble formed a Limited Liability Company (LLC), A & R Environmental Services (A & R), to provide waste hauling services. They were the only two members of the LLC. Their relationship deteriorated and Mr. Noble moved to dissolve A & R. The court distributed the assets equally between the partners. Mr. Ross appeals. Because the court did not dissolve the LLC according to the statutory requirements of RCW 25.15.300, we reverse and remand.
¶ 2 Robert Noble owned A. Noble, Inc. (ANI) with his wife Andrea. ANI was in the construction and garbage hauling business, providing environmental clean up, waste transportation, and container hauling for commercial clients. ANI had over 50 clients.
¶ 3 Mr. Noble met Mr. Ross in the mid-1990s. Mr. Ross had sold his waste hauling business in Washington. He was interested in Mr. Noble's customers.
¶ 4 The pair formed A & R as an LLC in 1999. Mr. Ross and Mr. Noble are the only two members. Although drafts of an operating agreement were prepared, no agreement was ever executed.
¶ 5 Mr. Noble gave all his commercial accounts to A & R. Mr. Noble testified the pair agreed these accounts were valued at $1.5 million. Mr. Ross contributed 8 drop boxes and a $1.5 million line of credit. According to Mr. Noble, each was to have a 50 percent interest in A & R.
¶ 6 A & R began providing waste hauling services in Washington and Oregon. It maintained offices in Clackamas, Oregon, and Goldendale, Washington. Mr. Noble managed the Oregon office and Mr. Ross ran the Washington office. The Oregon office coordinated the hauling side of the business, while the Washington office handled the accounting functions.
¶ 7 In 2002, Mr. Noble filed this action to dissolve A & R. At trial Mr. Ross presented evidence through Brian Enstad, the controller for many of his business holdings. Mr. Enstad testified at length about the contributions made to A & R by Mr. Ross and various business entities he owned.
¶ 8 At the time of trial A & R had a contract referred to as the Ash Haul Contract. A & R also owned approximately 80 drop boxes, two Peterbilts, and leased a trailer and six container trailers.
¶ 9 The court found that both Mr. Ross and Mr. Noble "were playing fast and loose with assets and sister companies and making it difficult to track who was doing what and to whom." Clerk's Papers (CP) at 143. It further found the parties intended by their actions to be equal members of A & R and valued their initial contributions as equal despite the actual value of those contributions. The court made no factual finding regarding *521 the value of any of the assets. The court found that the evidence of who contributed what after the initial formation of A & R was lacking in credibility.
¶ 10 The court then dissolved the LLC pursuant to chapter 25.15 RCW. It awarded the Ash Haul Contract and one of the Peterbilts to Mr. Ross. It awarded the drop boxes and one of the Peterbilts to Mr. Noble. Each was to receive one-half of any bank accounts held by A & R and one-half of the accounts receivable. To equalize the distribution, a judgment Mr. Ross obtained against Mr. Noble in Oregon was discharged by the court. Mr. Ross appeals.
¶ 11 First Mr. Ross challenges three of the court's findings of fact. Those findings are as follows:
10. On the theory of unjust enrichment, the Court finds in favor of the defendant, largely because to some extent, both parties were playing fast and loose with assets and sister companies and making it difficult to track who was doing what and to whom.
11. The Court finds that the parties intended, by their negotiations and their actions, to be equal members of, and to have an equal ownership interest in, A & R Environmental, and that they valued their initial contributions equally, regardless of what the fair market value of their initial contributions may have been.
12. With regard to any contributions supposedly made after the initial formation of A & R Environmental, the Court finds that the evidence on both sides of who contributed what and whether it was in the form of credit card payments or loans or anything else is largely lacking in credibility. The Court further finds that the information given to Mr. Enstad is inherently unreliable, largely in part because he was just going by what somebody else told him, and in part because there was so much shifting back and forth among the related companies and business interests involved.
CP at 143-44.
¶ 12 Findings of fact are reviewed for substantial evidence, i.e., the evidence sufficient to persuade a rational fair-minded person the premise is true. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wash.2d 873, 879-80, 73 P.3d 369 (2003). When this standard is satisfied, a reviewing court will not substitute its judgment for the trial court even though it might have resolved a factual dispute differently. Id. Conclusions of law are reviewed de novo. Id.
¶ 13 Based upon the testimony before the court, the finding that both parties played fast and loose with their assets was supported by substantial evidence. However, this finding relates to a claim of unjust enrichment, which the court found in favor of Mr. Ross. Mr. Noble has not appealed this ruling. Thus, the finding is not really directly related to any issue currently on appeal.
¶ 14 Mr. Ross next challenges finding of fact 11 which sets forth the parties' intent with respect to their ownership interests in A & R. This finding is based upon the testimony of Mr. Noble. Mr. Ross claims the court should not have believed Mr. Noble, but he presented no evidence to contradict this testimony. The finding was supported by substantial evidence. However, for the reasons indicated below, the subjective intent of the parties is not relevant.
¶ 15 Finally Mr. Ross challenges finding of fact 12. This finding goes to the credibility of Mr. Enstad's testimony. Our standard of review requires us to accept the fact finder's view on credibility of the witnesses. See Freeburg v. City of Seattle, 71 Wash.App. 367, 371-72, 859 P.2d 610 (1993). The trial court was in a better position to evaluate the credibility of witnesses and we will not substitute our judgment for the trial court when reviewing findings of fact. Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wash.2d 364, 369-70, 798 P.2d 799 (1990).
¶ 16 Next Mr. Ross claims the court erred by failing to make a complete accounting of the LLC's assets and liabilities. RCW 25.15.300 governs the distribution of assets of the LLC upon dissolution. Nothing in that statute specifically requires the completion of an accounting. Mr. Ross asserts that without an accounting, it was not possible to determine if the LLC assets were properly distributed. But this court can and will decide *522 whether the assets presented to the court at trial were distributed in accordance with the governing statute.
¶ 17 Mr. Ross asserts the court erred in its distribution of A & R's assets upon dissolution. RCW 25.15.275 authorized the trial court to dissolve A & R. RCW 25.15.300 sets forth how the assets should be distributed:
(1) Upon the winding up of a limited liability company, the assets shall be distributed as follows:
(a) To creditors, including members and managers who are creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the limited liability company (whether by payment or the making of reasonable provision for payment thereof) other than liabilities for which reasonable provision for payment has been made and liabilities for distributions to members under RCW 25.15.215 or 25.15.230;
(b) Unless otherwise provided in a limited liability company agreement, to members and former members in satisfaction of liabilities for distributions under RCW 25.15.215 or 25.15.230; and
(c) Unless otherwise provided in a limited liability company agreement, to members first for the return of their contributions and second respecting their limited liability company interests, in the proportions in which the members share in distributions.
(2) A limited liability company which has dissolved shall pay or make reasonable provision to pay all claims and obligations, including all contingent, conditional, or unmatured claims and obligations, known to the limited liability company and all claims and obligations which are known to the limited liability company but for which the identity of the claimant is unknown. If there are sufficient assets, such claims and obligations shall be paid in full and any such provision for payment made shall be made in full. If there are insufficient assets, such claims and obligations shall be paid or provided for according to their priority and, among claims and obligations of equal priority, ratably to the extent of assets available therefor. Unless otherwise provided in a limited liability company agreement, any remaining assets shall be distributed as provided in this chapter. Any person winding up a limited liability company's affairs who has complied with this section is not personally liable to the claimants of the dissolved limited liability company by reason of such person's actions in winding up the limited liability company.
This statute refers to an agreement. RCW 25.15.005(5) defines an agreement as "any written agreement of the members, or any written statement of the sole member, as to the affairs of a limited liability company and the conduct of its business which is binding upon the member or members." A & R did not have a written operating agreement. Oral agreements do not satisfy the statutory requirements. Thus, the court was required to follow the statute in distributing the LLC assets.
¶ 18 Our objective in construing a statute is to give effect to legislative intent. Udall v. T.D. Escrow Servs., Inc., 159 Wash.2d 903, 909, 154 P.3d 882 (2007). "Where statutory language is plain and unambiguous, a court will not construe the statute but will glean the legislative intent from the words of the statute itself." Burton v. Lehman, 153 Wash.2d 416, 422, 103 P.3d 1230 (2005). Courts may not read into a statute a meaning that is not there. Id. at 422-23, 103 P.3d 1230.
¶ 19 RCW 25.15.300 is clear. It first requires the court to distribute assets to any creditors of the LLC, including creditors who are also members and managers of the LLC.
¶ 20 But the court made no findings regarding creditors. "[F]indings must be made on all material issues in order to inform the appellate court as to `what questions were decided by the trial court, and the manner in which they were decided.'" Fed. Signal Corp. v. Safety Factors, Inc., 125 Wash.2d 413, 422, 886 P.2d 172 (1994) (quoting Daughtry v. Jet Aeration Co., 91 Wash.2d 704, 707, 592 P.2d 631 (1979)) (internal quotation marks omitted). The nature and degree of exactness of required findings *523 depends on the circumstances of the particular case. Id.
¶ 21 The court made no distributions to any creditors. The court was required to make findings sufficient to inform this court as to why no creditors were awarded distributions. We thus remand for entry of findings of fact which show an understanding of the conflicting positions and evidence as well as knowledge of the statutory requirements. Fed. Signal, 125 Wash.2d at 423, 886 P.2d 172.
¶ 22 RCW 25.15.300(1)(b) next requires distributions to members or former members to satisfy liabilities for distributions pursuant to RCW 25.15.215 and RCW 25.15.230. This section does not apply to the facts here.
¶ 23 Finally, RCW 25.15.300(1)(c) requires the court to distribute assets to members first for the return of their capital contributions and then in proportion in which the members share distributions.
¶ 24 In its findings the court mentions the initial contributions of the parties, but it does not list or inventory them in any way. The court also does not list any subsequent contributions of the members. Because RCW 25.15.300(1)(c) requires contributions be returned to members, the court should have made findings on this issue.
¶ 25 Given the positions of the parties and the conflicting testimony, the court needed to make specific findings indicating who contributed what to A & R. The court should have set out an inventory of assets indicating the origin of the asset, the type of asset, and its value. Pursuant to the statute, the court is required to return any contribution to the member who contributed it. Unfortunately, the court did not enter any findings indicating which assets A & R still had and who contributed them. Thus, it is impossible for this court to determine if the distribution of assets complies with the statutory requirements.
¶ 26 Mr. Ross further argues the court erred in determining that the Oregon judgment Mr. Ross had against Mr. Noble was deemed satisfied. Mr. Noble on behalf of A & R had sued Mr. Ross and another of his business entities in Oregon for loss of a business opportunity. Mr. Ross prevailed in that action and obtained a judgment against Mr. Noble for $25,385. This judgment was not an asset of A & R that was subject to distribution. On remand the court may consider whether this judgment makes Mr. Ross a creditor.
¶ 27 The court did not apply RCW 25.15.300 to the facts presented at trial as required. The judgment of the court should be reversed and remanded for adequate findings. See Schoonover v. Carpet World, Inc., 91 Wash.2d 173, 178, 588 P.2d 729 (1978).
¶ 28 Mr. Ross also contends the court erred by making adverse inferences because he did not testify. He claims the court applied the "missing witness doctrine." There is nothing in the record to suggest the court used this missing witness doctrine or made any inferences from the fact Mr. Ross did not testify when it rendered its decision.
¶ 29 Mr. Ross finally claims that equitable principles do not permit the court to contravene statutory directives. Courts will not give relief on equitable grounds in contravention of a statutory requirement. Longview Fibre Co. v. Cowlitz County, 114 Wash.2d 691, 699, 790 P.2d 149 (1990). Because the court did not follow the mandates of the applicable statutes, we must reverse and remand. We need not reach Mr. Ross's equitable arguments.
¶ 30 Reversed and remanded.
WE CONCUR: SWEENEY, C.J., and STEPHENS, J.
NOTES
[*] Justice Richard B. Sanders is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.