뜨ᄂᄂ
ᄂ ᄂ ᄂ
ᄂ ᄂ ᄂ


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| In re the Estate of | No. 70248-3-I |
| HOMER R. HOUSE, | DIVISION ONE |
| Deceased. | |
| LINDA McMURTRAY and LARRY PIZZALATO, | |
| Appellants, | |
| v. | |
| JANET CORNELL; ROBERT HOUSE; SUSAN TERHAAR; and JUDITH THEES, | UNPUBLISHED |
| | FILED: December 22, 2014 |
| Respondents. | |

Cox, J. — "A release is a contract and its construction is governed by contract principles subject to judicial interpretation in light of the language used."[1] Courts generally uphold the validity of releases.[2] Here, Vera J. House, along with Linda McMurtray and Larry Pizzalato (collectively "Vera's Children"), and

---

[1] Nationwide Mut. Fire Ins. Co. v. Watson, 120 Wn.2d 178, 187, 840 P.2d 851 (1992).

[2] Id. at 186-87; see also Metro. Life Ins. Co. v. Ritz, 70 Wn.2d 317, 318, 422 P.2d 780 (1967) (concluding that regardless of the intent of the parties signing the release, an unconditional general release of "all claims" included all claims as a matter of law).

Janet Cornell, Robert House, Susan Terhaar and Judith Thees (collectively "Homer Ray's Children"), signed a Trust Termination Agreement in 2005.[3] By its express terms, all parties to that agreement mutually agreed to "release and discharge each other from any and all claims, demands, actions or cause[s] of action, known or unknown, that any of them may have or hereafter may acquire, arising out of or in any way connected with the Family Trust, the Decedent's Trust, the Estate of Homer R. House, or their respective rights or interests thereunder."[4] We hold that the claims that Vera's Children assert in this proceeding fall within the terms of this release and are therefore barred. We also hold that the trial court did not abuse its discretion in awarding to Homer Ray's Children ownership of the mineral rights that are in dispute. Finally, the court did not abuse its discretion in awarding attorney fees in favor of the Estate of Homer R. House and Homer Ray's Children against Vera's Children. We affirm.

This TEDRA proceeding arises from competing claims to ownership of oil and gas mineral rights in real property located in the state of Colorado. In 1924, Homer Virgil House, the then owner of the property, conveyed it to another, reserving in himself ownership in an interest in the net income from oil and gas mineral rights in the property. Homer Virgil[5] died in 1974. He was survived by his six children, including his son Homer Ray House. The record establishes that

---

[3] Clerk's Papers at 184-88.

[4] Id. at 183.

[5] This opinion uses his first and middle names to distinguish him from his son.

2

none of the parties to this proceeding knew of the interest in the mineral rights until 2011.

Homer Ray had four children. Homer Ray's second wife, Vera, had two children. Homer Ray never adopted Vera's Children.

In 1991, Homer Ray and Vera created the Homer R. House and Vera J. House Family Trust.[6] They were the trustors and co-trustees of this family trust. The trust agreement provided that upon the death of either trustor, the surviving spouse, as trustee, would divide the trust into a Survivor's Trust and a Decedent's Trust.[7]

Homer Ray died testate in 2004. He was survived by Vera, Homer Ray's Children, and Vera's Children. Vera did not file Homer Ray's will or open probate for his estate. It is undisputed that she distributed known assets from the Family Trust into a Survivor's Trust and a Decedent's Trust.

In 2005, Vera terminated the Survivor's Trust and appointed all the assets in that trust to herself.

Later that year, Vera, Homer Ray's Children, and Vera's Children, executed the Trust Termination Agreement.[8] By its express terms, the agreement terminated the Decedent's Trust. Moreover, Vera, Homer Ray's Children, and Vera's Children, mutually released and discharged each other from "any and all claims . . . known or unknown, that any of them may have or

---

[6] Clerk's Papers at 295.

[7] Id. at 301.

[8] Id. at 181-89.

3

hereafter may acquire, arising out of . . . the Family Trust, the Decedent's Trust, the Estate of Homer R. House, or their respective rights or interests thereunder."[9]

In 2007, Vera House died testate. Under her will, Vera's Children were equal beneficiaries of her estate.

In 2011, after the parties learned that Homer Virgil had reserved an interest to mineral rights in the Colorado property, the personal representative of Homer Virgil's estate released Homer Ray's one-sixth share of net income from the reserved oil and gas rights to the personal representative of Homer Ray's estate. The value of these rights is approximately $65,000 in current income plus an undetermined amount of possible future income.

In January 2012, Vera's Children commenced this TEDRA proceeding, claiming that the mineral rights passed to them. Janet Cornell, as personal representative of the Estate of Homer R. House, responded to the petition, and later, petitioned for distribution of the mineral rights interest and proposed distribution solely to Homer Ray's Children.

Vera's Children moved for summary judgment, asserting that they were entitled to the mineral rights as a matter of law. In opposing this motion, Cornell took the position that the release in the Trust Termination Agreement barred the claim of Vera's Children and she again urged distribution of the mineral rights to Homer Ray's Children. The court denied this motion, and the case proceeded to trial.

---

[9] Id. at 183.

At the close of the bench trial, the court determined that the Trust Termination Agreement barred the claims of Vera's Children. The court then exercised its equitable discretion and awarded the interest in the mineral rights to Homer Ray's Children. It also ordered Vera's Children to pay attorney fees and costs to the Estate and to Homer Ray's Children. The court substantially denied the motion for reconsideration of Vera's Children regarding the award of attorney fees.

Vera's Children appeal.

## TRUST TERMINATION AGREEMENT

The Estate and Homer Ray's Children both argue that Vera's Children released any and all claims to the mineral rights that are at issue in this case. We hold that the Trust Termination Agreement that the parties signed in 2005 did exactly that. Assertions to the contrary are not well-taken.

"A release is a contract and its construction is governed by contract principles subject to judicial interpretation in light of the language used."[10]

"'The touchstone of contract interpretation is the parties' intent.'"[11] "We follow 'the objective manifestation theory of contracts, imputing an intention corresponding to the reasonable meaning of the words used.'"[12]

---

[10] Nationwide, 120 Wn.2d at 187.

[11] In re Estate of Bernard, 182 Wn. App. 692, 697, 704, 332 P.3d 480 (2014) (internal quotation marks omitted) (quoting Realm, Inc. v. City of Olympia, 168 Wn. App. 1, 4-5, 277 P.3d 679, review denied, 175 Wn.2d 1015 (2012)).

[12] Id. (quoting Realm, 168 Wn. App. at 5).

This court reviews legal conclusions de novo.[13]

Here, the trial court concluded that Vera's Children waived any claim to assets in the Estate of Homer Ray and to any assets in any trust created under the 1991 Family Trust as a result of the 2005 Trust Termination Agreement:

> The parties to the Trust Termination Agreement waived "any and all claims, demands, actions or cause of action known or unknown, that any of them may have or hereafter may acquire, arising out of or in any way connected with the Family Trust, the Decedent's Trust, the Estate of Homer R. House, or their respective rights or interests thereunder."[14]

This conclusion is supported by the language of the agreement, which is the objective manifestation of the parties' intent. Specifically, the agreement states in relevant part that Vera, "as Trustee, Trustor and individually as Vera J. House," as well as Homer Ray's Children and Vera's Children did:

> release and discharge each other from *any and all claims*, demands, actions or cause[s] of action, *known or unknown*, that any of them *may have or hereafter may acquire*, *arising out of* or *in any way connected with* the *Family Trust, the Decedent's Trust, the Estate of Homer R. House, or their respective rights or interests thereunder* . . . . [T]he *sole* remaining right of the parties as regards each other shall be the right to enforce the performance of this Agreement.[15]

This plain language bars "*any and all claims*" that are "*known or unknown*."[16] There can be no serious debate over the very broad scope of this

---

[13] In re Pers. Restraint of Cross, 180 Wn.2d 664, 681, 327 P.3d 660 (2014).

[14] Clerk's Papers at 608.

[15] Id. at 183 (emphasis added).

[16] Id. (emphasis added).

language. The release applies to any "claim," whether "known or unknown," to the subject matter that is defined in the language that follows this text. The record establishes that at the time of execution of this agreement in 2005, none of the parties to it knew of the mineral rights that first became known to them in 2011. But that lack of knowledge is irrelevant in view of the fact that the plain text of the release applies to either "known or unknown" claims. Thus, this agreement applies to the claims asserted here to the extent they fall within the subject matter that is defined in the text that follows this broad language.

The subject matter released includes any claims that the parties to the agreement "may have or hereafter may acquire."[17] The plain meaning of this text is that it includes then existing claims as well as those that the parties might acquire in the future. Thus, claims they held as of 2005 were released. Likewise, any claims they acquired after 2005 were also released.

The next important text is "arising out of." This term is also very broad in scope.[18] Equally broad in scope is the term that follows—"in any way connected with." Applied here, these terms pertain to specific objects: "[T]he Family Trust, the Decedent's Trust, the Estate of Homer R. House, or their respective rights or interests thereunder."[19]

---

[17] Id.

[18] See Toll Bridge Auth. v. Aetna Ins. Co., 54 Wn. App. 400, 404, 773 P.2d 906 (1989).

[19] Clerk's Papers at 183.

7

Significantly, the Estate of Homer R. House was the gateway through which the mineral rights in dispute passed. This is because these rights passed by way of intestate succession from his father. Accordingly, by signing the release in this document, Vera's Children waived any claim "arising out of or in any way connected with" the Estate of Homer R. House.[20] In sum, they waived any claim to the mineral rights that passed through it.

Likewise, and for similar reasons, they also waived any claim to the mineral rights that passed through the Family Trust. This trust was the conduit through which these rights passed from the Estate of Homer R. House.

For these reasons, Vera's Children are barred from asserting the claims they make here.

Notably, the last sentence of the paragraph states: "[T]he *sole* remaining right of the parties as regards each other shall be the right to enforce the performance of this Agreement."[21] It neither carves out of the broad scope of the preceding language in the release any exception to that broad language nor does it expand the scope of the rights reserved to the parties. In short, the only right retained by Vera's Children was to "enforce the performance of this Agreement."[22] Seeking to enforce claims they expressly released in 2005 does not fall within the sole right they retained.

---

[20] Id.

[21] Id. (emphasis added).

[22] Id.

8

We also note that Vera, "as Trustee, Trustor and individually as Vera J. House" also released the claims we have discussed.[23] Even if Vera's Children were able to show that they are not bound by the plain terms of their express waiver under this agreement, they have failed to explain why Vera would not be bound. Because their arguments necessarily are based on taking through her, failing to show why Vera would not be bound by her express waiver under this agreement is fatal to their claims.

In sum, Vera's Children released any claim to this then unknown asset in 2005 by executing the Trust Termination Agreement. Their claims to this asset are barred.

The Estate relies on the doctrine of judicial estoppel to argue that the claims of Vera's Children are barred. Because we resolve this dispute based on the release in the Trust Termination Agreement, we need not address this argument.

Vera's Children assert that the date of vesting of the mineral rights, under Colorado law, was Homer Ray's death in 2004. This was the year prior to their execution of the Trust Termination Agreement in 2005. Thus, they argue that the release has no impact and does not preclude their claim because "they did not release the right to property in which they already held a vested ownership interest."[24]

---

[23] Id.

[24] Consolidated Reply Brief at 17-18 (emphasis omitted).

The plain language of the agreement refutes this argument. The release contains no language akin to that quoted in the immediately preceding paragraph.

In considering this argument, we assume, without deciding, that a conflict exists between Washington law and Colorado law whether the rights to the mineral rights in the Colorado property vested at the time of the 2004 death of Homer Ray. We further assume, without deciding, that the correct choice of law for purposes of this conflict is the law of Colorado.[25] We conclude that the application of Colorado law on vesting at the time of the decedent's death does not evade the unequivocal release of any claims, known or unknown, by Vera's Children in the 2005 Trust Termination Agreement, as we have discussed.[26]

If they had a claim to an interest in that property in 2004 by way of Colorado law, they waived the right to claim such an interest when they executed the release in 2005. The language in the agreement is quite specific: they released any claim, whether "known or unknown," that they then "may have or hereafter may acquire."[27] If, on the other hand, they acquired such an interest after 2005, they also released it by virtue of the 2005 agreement by virtue of the language we just quoted. There is no other reasonable interpretation of this provision.

---

[25] See Werner v. Werner, 84 Wn.2d 360, 366-67, 526 P.2d 370 (1974).

[26] COLO. REV. STAT. ANN. § 15-12-101.

[27] Clerk's Papers at 183.

10

We again note that Vera's Children could only take by way of Vera. But Vera also released any claim to property in the 2005 Trust Termination Agreement. Vera's Children leave unexplained how they could take through her under these circumstances even if they somehow escaped their express release in the Trust Termination Agreement.

Vera's Children argue that this asset "defaulted" to the Survivor's Trust. Implicit in this is the argument that the release does not bar Vera's Children's claim, because the Survivor's Trust is outside the scope of the release. Assuming, without deciding, that the mineral rights defaulted to the Survivor's Trust, this claim still fails for the reasons we previously explained in this opinion. The very broad language that the release applied to any claims "arising out of or in any way connected" with the Family Trust and the Estate of Homer R. House defeats this claim.[28]

Because we conclude that the release bars this claim regardless of its location, the precise location of the asset is not material to our conclusion. Thus, we need not address Vera's Children's assignments of error to the challenged findings of fact and conclusions of law relating to the trial court's resolution of this issue.

Vera's Children as well as all other parties to the agreement released any claim to the mineral rights by virtue of the Trust Termination Agreement. Thus, the relevant question is whether the court abused its discretion by distributing this

---

[28] Clerk's Papers at 183.

previously unknown asset on the basis of equitable principles. We address that question in the next portions of this opinion.

## EQUITABLE AUTHORITY

Vera's Children argue that the court erred when it concluded that it had equitable authority to make a distribution "'regardless of how legal title may have been held.'"[29] We hold that the court did not abuse its discretion by applying equitable principles to the distribution of the mineral rights asset.

Under TEDRA, courts have "full and ample power and authority" to administer and settle, among other things, "[a]ll matters concerning the estates and assets of . . . deceased persons" and "[a]ll trusts and trust matters."[30] And the court "has full power and authority" to proceed with administration and settlement of matters "*in any manner and way that the court seems right and proper*, all to the end that the matters be expeditiously administered and settled by the court."[31] "Matter" includes any dispute involving "[t]he determination of . . . devisees, legatees, heirs, next of kin, or other persons interested in an estate, trust, nonprobate asset, or with respect to any other asset or property interest passing at death."[32] These statutes support the broad view of the superior court's authority, under TEDRA, to apply equity to distribution of the asset.

---

[29] Opening Brief of Appellants (quoting Clerk's Papers at 612).

[30] RCW 11.96A.020(1)(a), (b).

[31] RCW 11.96A.020(2) (emphasis added).

[32] RCW 11.96A.030(2)(a).

12

Vera's Children argue that "the trial court may not ignore controlling law in order to do what it considers 'equity'" and that "trial courts do not have unlimited authority" to exercise their equitable powers.[33] In support of this, they cite a secondary source, which states: "[W]here rights are defined and established by existing legal principles, they may not be changed or unsettled in equity."[34] But as just discussed, Vera's Children released any claims to the disputed property and thus have no legal right on which to base this argument. And TEDRA provides the court with equitable authority to resolve this dispute. Vera's Children fail to convincingly argue what other legal principles override the court's exercise of its equitable authority in this case.

Vera's Children rely on Noble v. A & R Environmental Services LLC for the proposition that "[c]ourts will not give relief on equitable grounds in contravention of a statutory requirement."[35] And they rely on Town Concrete Pipe of Washington Inc. v. Redford for the proposition that "'[w]hile equity will not suffer a wrong without a remedy, equity follows law and cannot provide a remedy where legislation expressly denies it.'"[36] But both of these cases are distinguishable. Further, neither case involved a dispute brought under TEDRA. And the

---

[33] Opening Brief of Appellants at 26 (citation omitted).

[34] 27A AM. JUR. 2D Equity § 83 (2013).

[35] Opening Brief of Appellants at 28 (quoting Noble v. A & R Envtl. Servs., LLC, 140 Wn. App. 29, 37-38, 164 P.3d 519 (2007)).

[36] Id. (quoting Town Concrete Pipe of Wash., Inc. v. Redford, 43 Wn. App. 493, 498, 717 P.2d 1384 (1986)).

language in TEDRA that we previously cited in this opinion supports the exercise of equitable authority in this proceeding.

Vera's Children argue that "[b]ecause statutes and case law determine passage of interest in land, the trial court's equitable jurisdiction should not have been invoked or exercised."[37] In particular, they argue that legal title flowed to them as a matter of law because: (1) Real property interests transfer automatically, and Homer Ray had an interest in the mineral rights on his father's death; (2) The interest was transferred to the trust through Homer Ray's will when he died in 2004; (3) The interest defaulted to the Survivor's Trust and then to Vera when she revoked the Survivor's Trust; and (4) The rights passed to Vera's Children upon Vera's death in 2007 through her will.[38]

This might be true had they not released any claims to the disputed property. But having done so, they have no right to argue on the basis of any claimed interest in the property in Colorado.

Vera's Children argue, in the alternative, that if the mineral rights failed to pass to the Survivor's Trust and then to Vera, they either (1) remained in the Family Trust to pass according to the Trust Agreement; or (2) passed through intestate succession.[39] But again, Vera's Children do not persuasively argue why, under either of these scenarios, the release would not bar their claim to an

---

[37] Id. at 39.

[38] See id. at 30-37.

[39] Id. at 37-38.

asset that remained in the Family Trust or in Homer Ray's estate. Thus, these alternative arguments are also not persuasive.

Finally, Vera's Children argue that if the release applies, the Estate would be left with an asset that no party could lay claim to and "the trial court should have resorted to the legal dictates of intestate succession over invoking equity to distribute the asset as the trial court saw fit."[40] But Vera's Children provide no authority to support this argument. We reject it.

## DISTRIBUTION TO HOMER RAY'S CHILDREN

Vera's Children argue that the trial court abused its discretion when it awarded the mineral rights to Homer Ray's Children. We disagree.

This court reviews a trial judge's exercise of equitable authority for abuse of discretion.[41] A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons.[42] "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard."[43]

The trial court concluded that it "would be equitable for [Homer Ray's Children] to receive equal shares of the Colorado property in dispute and any

---

[40] Consolidated Reply Brief at 19.

[41] Harman v. Dep't of Labor & Indus., 111 Wn. App. 920, 928, 47 P.3d 169, review denied, 147 Wn.2d 1025 (2002).

[42] In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

[43] Id. at 47.

15

income from that property."[44] It also concluded that "there are substantial equitable considerations that weigh in favor of distributing the disputed property to [Homer Ray's Children]."[45]

The court relied on several equitable factors. For example, the court stated that the disputed assets were originally owned by Homer Virgil, the grandfather of Homer Ray's Children. The court noted that Homer Ray's Children knew their grandfather and that Vera's Children did not have the same relationship with Homer Virgil. Additionally, the court stated that descendants have a natural attachment to family property. And the court concluded that it "would not be economically inequitable to distribute the disputed property to [Homer Ray's Children]" because it would "still leave [Vera's Children] with substantially more of the assets accumulated by Homer R[ay] and Vera."[46] After considering these factors, the court properly exercised its discretion.

Vera's Children argue that the court "did not comprehend—or refused to accept—that Vera had the legal right to put the assets into the Survivor's Trust, revoke that trust, and pass those assets to her children . . . ."[47] And they argue that the Family Trust did not require equal distribution. But even if this were true, they fail to explain how the court abused its discretion when it considered the above factors. The question is whether the court's decision was within the range

---

[44] Clerk's Papers at 612.

[45] Id. at 613.

[46] Id. at 614.

[47] Opening Brief of Appellants at 39.

of reasonable choices that it was entitled to make, not whether Vera's Children agreed with that choice.[48]

Vera's Children argue that "[t]he trial court's abuse of its discretion to reach a personally desired result is also apparent in specific aspects of its findings and conclusions and earlier rulings."[49] Specifically, they argue that findings of fact 19, 26 and 27 were not supported by substantial evidence. In general, these findings state that there is no inventory of assets, no document identifying a division of assets, and no "trustee's books of account" that identifies the allocation of assets between the Survivor's Trust and the Decedent's Trust.[50] But again, Vera's Children fail to explain how these findings are material to this issue, or how this shows an abuse of discretion. Accordingly, we do not address this argument any further.

Finally, Vera's Children also argue that the trial court erred in not considering their offer of proof, when the trial court ultimately decided the case. They argue that "[t]he 'un-considered' evidence went directly to the family relationships, was relevant, and should have been considered."[51]

We do not read the record in the manner argued. A fair reading of this record is that the trial court admitted the written offer of proof, subject to

---

[48] See Littlefield, 133 Wn.2d at 47.

[49] Opening Brief of Appellants at 40.

[50] Clerk's Papers at 606-07.

[51] Opening Brief of Appellants at 41.

relevancy and other objections to be made at a later time. Two days later, the court considered and ruled on objections to each of the parts of the written offer of proof that it earlier admitted. Assuming, without deciding, that the court abused its discretion in excluding portions of the written offer of proof, such error was harmless. The evidence in this offer of proof was largely cumulative to other evidence that was before the court. For example, the offer of proof illustrated that the parties were embroiled in legal disputes and that the family relationships were strained. This was well known to the court when it made its oral ruling in this case. For these reasons, we reject this claim of error.

## ATTORNEY FEES

Vera's Children argue that the court abused its discretion when it ordered them to pay attorney fees to Homer Ray's Children and to the Estate. We disagree.

### At Trial

Under RCW 11.96A.150(1), a court may award fees "[f]rom any party" "in such amount and in such manner as the court determines to be equitable." The court may consider "any and all factors that it deems to be relevant and appropriate . . . ."[52]

---

[52] RCW 11.96A.150(1)(c).

Where litigation was necessitated by a party's actions, the court may direct him to personally pay attorney fees to other parties.[53] A court may also award fees in order to prevent depletion of the assets.[54]

This court reviews an award of attorney fees for abuse of discretion.[55] A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or reasons.[56]

Here, the trial court awarded fees to the Estate and to Homer Ray's Children, in the amounts of $113,986 and $36,303 respectively.[57] In making these awards, the court considered several factors.

The court considered the fact that the Estate prevailed in this matter and that the court did not adopt Vera's Children's legal positions.[58] It also noted that the time required to address the issues presented was commensurate with Vera's Children's "vigorous pursuit of their claims."[59] Further, the court stated that it "would be inequitable for [the parties that will share in the Estate] to bear

---

[53] Estate of Jones, 152 Wn.2d 1, 20-21, 93 P.3d 147 (2004).

[54] In re Irrevocable Trust of McKean, 144 Wn. App. 333, 345, 183 P.3d 317 (2008).

[55] Estate of Ehlers, 80 Wn. App. 751, 764, 911 P.2d 1017 (1996).

[56] Littlefield, 133 Wn.2d at 46-47.

[57] Clerk's Papers at 930, 861.

[58] Id. at 857.

[59] Id.

[the] costs without an allocation of fees and costs to [Vera's Children]."[60] These were appropriate factors to consider. The court properly exercised its discretion.

Vera's Children argue that RCW 11.96A.150 is not a prevailing party statute. This is true. But it is also true that courts are not precluded from considering this as a factor. And both the Estate and Homer Ray's Children were the prevailing parties.

Vera's Children also argue that the award is not authorized by statute because it "included the unstated basis of punishing [Vera's Children]."[61] They point out that the Estate conceded that it would have incurred up to $12,500 in fees to deal with probate, and the trial court concluded that this would be an "'equitable cap on the total probate and litigation fees to be allocated to [Homer Ray's Children].'"[62] They then point out that the trial court only reduced the fees awarded to the Estate by $6,000 and argue that the "only fair implication" of this is that the trial court was punishing Vera's Children.[63]

This argument has no reasonable basis in this record, particularly in view of the court's reduction in the original amount requested after having certain facts called to its attention. As we read this record, the court determined that reasonable fees and costs for an uncontested probate and ancillary probate

---

[60] Id.

[61] Opening Brief of Appellants at 42.

[62] Id. at 43 (quoting Clerk's Papers at 930).

[63] Id.

would have been $6,000.[64] The court deducted that amount from the revised total of fees and costs after certain facts were called to its attention. That is the net awarded.[65] The claim that punishment was involved is baseless.

Next, Vera's Children argue that the personal representative improperly took sides and breached her fiduciary duty. We disagree.

They primarily rely on In re Cannon's Estate and Thompson v. Weimer for the proposition that the personal representative cannot take sides between potential distributes and cannot urge the claims of one against another.[66] But these cases do not support the proposition that the Estate must not take a position with respect to claims made against the estate just because it is consistent with that taken by others involved in the same litigation.

The Estate points to Estate of Kvande v. Olsen, which expressly stated that "a personal representative is obliged to present his position in a probate matter where there is a dispute as to distribution."[67] This is the rule that controls here.

---

[64] Clerk's Papers at 928.

[65] Id. at 930.

[66] Opening Brief of Appellants at 46 (citing In re Cannon's Estate, 18 Wn. 101, 105, 50 P. 1021 (1897); Thompson v. Weimer, 1 Wn.2d 145, 150, 95 P.2d 772 (1939)).

[67] 74 Wn. App. 65, 72, 871 P.2d 669, review denied, 124 Wn.2d 1021 (1994).

*On Appeal*

The Estate and Homer Ray's Children request attorney fees on appeal. They rely on RCW 11.96A.150. For substantially the same reasons identified by the trial court, we conclude they are also entitled to fees on appeal. We also note that regardless of how one resolved the threshold question—the effect of the release in the Trust Termination Agreement—there was still a need to resolve the question of how to distribute the rights to the mineral rights. In this case, a trial was required and this appeal followed. Given the current value of the assets, it would be inequitable to impose the costs of litigation on appeal on either the Estate or Homer Ray's Children. This burden properly falls on Vera's Children, not Homer Ray's Children or the Estate.

## MOTION TO STRIKE

The Estate moves to strike portions of the Opening Brief "that refer to exhibits never offered or admitted at trial" and that refer to a declaration submitted post-trial.[68] We deny the motion and deny any award of fees relating to this motion.

RAP 9.6 provides that parties should designate clerk's papers and exhibits that they want the trial court clerk to transmit to the appellate court. An appellate court may strike references to materials that are not on the record at appeal.[69] But "a motion to strike is typically not necessary to point out evidence and issues

---

[68] Motion to Strike Portions of Appellants' Opening Brief at 1-5, Ex. A.

[69] See, e.g., State ex rel. Wash. State Convention & Trade Ctr. v. Allerdice, 101 Wn. App. 25, 35, 1 P.3d 595 (2000).

a litigant believes this court should not consider."[70] "So long as there is an opportunity . . . to include argument in the party's brief, the brief is the appropriate vehicle for pointing out allegedly extraneous materials—not a separate motion to strike."[71]

These principles apply here. Accordingly, we need not address this issue further.

We affirm the judgment and the orders, and we grant the Estate's and Homer Ray's Children's request for fees on appeal, subject to their compliance with RAP 18.1 and the limitations we discussed regarding the motion to strike. We deny the Estate's motion to strike.

Cox, J.

WE CONCUR:

---

[70] Engstrom v. Goodman, 166 Wn. App. 905, 909 n.2, 271 P.3d 959, review denied, 175 Wn.2d 1004, 285 P.3d 884 (2012).

[71] Id.