NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| TRIDENT SEAFOODS CORPORATION, a Washington corporation, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> ACE AMERICAN INSURANCE COMPANY, a foreign insurance company, <br><br> Defendant-Appellee. | No.   13-36035 <br><br> D.C. No. 2:12-cv-02265-JLR <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted August 29, 2016
Seattle, Washington

Before:  HAWKINS and McKEOWN, Circuit Judges, and EZRA,[**] District Judge.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable David A. Ezra, Senior United States District Judge for the District of Hawaii, sitting by designation.

Trident Seafoods Corporation ("Trident") appeals the summary judgment dismissal of its claim for breach of contract against ACE American Insurance Company ("ACE"). We affirm.

Trident sought partial indemnification from ACE, one of its insurers, after settling product complaints from a customer, Matsuura Suisan Company ("Matsuura"), which claimed Trident's fish oil product made Matsuura's farmed fish unusable. The fish oil had been harvested at sea onboard one of Trident's vessels and was contaminated with petroleum when a crack between adjacent tanks allowed petroleum to seep into one fish oil tank. As the fish oil was pumped off the vessel, the petroleum residue spread to other pipes and tanks, leading to contamination of fish oil subsequently stored in those other tanks. Matsuura purchased the fish oil and used it to make fish pellets it then fed to its farmed tuna stock. When Matsuura's customers found the "oily" smell and taste of its tuna unsuitable, Matsuura recalled the tuna and alerted Trident. Avoiding a lawsuit, Trident settled with Matsuura for roughly $5 million, to which two of Trident's other insurers contributed. ACE denied coverage based on a watercraft exclusion term in its policy, the interpretation of which is at the heart of this dispute.

2

ACE's commercial general liability policy dictates that it excludes coverage for "bodily injury" or "property damage" "arising out of the ownership, maintenance, use, or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by . . . any insured. Use includes operation and 'loading and unloading.'" This is the so-called watercraft exclusion. The policy, which provides products-completed operations hazard ("PCOH") coverage for third party product liability claims, defines PCOH coverage to exclude damage arising from transportation of completed goods, with a carve-out that *includes* coverage for damage to such goods arising out of "a condition in or on a vehicle created by the 'loading or unloading' of it."

The watercraft exclusion is not ambiguous and encompasses the contamination at issue here. Washington courts have defined "arising out of" to mean "originating from," "having its origin in," "growing out of," or "flowing from." *Toll Bridge Auth. v. Aetna Ins. Co.*, 773 P.2d 906, 908 (Wash. Ct. App. 1989) (quoting *Avemco Ins. Co. v. Moc*, 721 P.2d 34, 35 (Wash. Ct. App. 1986)). "[U]nder Washington law it is not necessary to analyze causation issues" when assessing an "arising from" policy term. *Krempl v. Unigard Sec. Ins. Co.*, 850 P.2d 533, 535 (Wash. Ct. App. 1993). The but-for causation analysis in which Trident invites us to participate is thus impermissible. The damage here originated with a crack in tanks aboard Trident's vessel, fairly characterized as the use or maintenance of a Trident watercraft. That loading and

3

unloading of the fish oil may have causally contributed to the contamination does not negate the effect of the watercraft exclusion's "arising out of" clause. *See Krempl*, 850 P.2d at 534 (finding that a risk excepted by an "arising out of" clause cannot set into motion an insured one).

Such a reading does not render coverage illusory. ACE's product liability coverage extends to Trident's onshore operations and facilities, and would apply to product defects originating with onshore events or negligence. *See Toll Bridge*, 773 P.2d at 910 (finding a watercraft exclusion not illusory based on similar reasoning).

Trident's alternate theory that the damage is the result of intervening negligence that occurred onshore invites but-for causation analysis inappropriate for interpreting "arising out of" exclusions. *American Best Food, Inc. v. Alea London, Ltd.,* concerning an insurer's duty to defend, is inapposite. 229 P.3d 693, 695, 700-01 (Wash. 2010) (holding that a nightclub's act of "dump[ing]" a gunshot-wounded patron out on the sidewalk contributed significantly to the patron's injuries, triggering a duty to defend in spite of the club's insurance policy exclusion for injuries arising from assault or battery). Even if we were to extend *Best Food*'s post-accident negligence theory to the indemnification context, the facts are distinguishable in that in *Best Food*, the patron's injuries were compounded by his eviction from the club—or, at least, this seemed plausible enough to justify that the club's insurer mount

4

its defense. Here, no further damage worsened the fish oil's condition once it reached shore; at most, Trident failed to test the oil once it discovered the crack, or to recall the fish oil from Matsuura. We thus affirm based on the Washington Court of Appeals' reasoning in *Toll Bridge*, 773 P.2d 906–10, and accordingly, we deny Trident's request for fees under *Olympic Steamship Co. v. Centennial Ins. Co.*, 811 P.2d 673, 681 (Wash. 1991).

**AFFIRMED.**