[No. 52161–1.   En Banc.   May 22, 1986.]

DEL GUZZI CONSTRUCTION CO., INC., *Plaintiff*, v. GLOBAL
NORTHWEST LTD., INC., ET AL, *Appellants*, CLALLAM
COUNTY, ET AL, *Respondents*.

*Weckworth, Barer & Meyer, Moshe Judah Genauer,* and *Charles L. Meyer,* for appellants.

*Schwabe, Williamson, Wyatt, Moore & Roberts,* by *David R. Antal,* for respondent Clallam County.

*Ulin, Dann, Elston & Lambe,* by *Dale R. Ulin,* for respondent Kennedy Engineers, Inc.

PEARSON, J.—In this case, Global Northwest, Ltd., Inc., a minority subcontractor, challenges a summary judgment entered against it in Clallam County Superior Court. Global brought suit against Clallam County and Kennedy Engineers, Inc., alleging breach of contract and negligence for cost overruns incurred by Global as a result of its failure to meet soil compaction density specifications during construction of the Sekiu–Clallam Bay sewerage project. The

Superior Court concluded that the statute of limitation barred Global's negligence claim and dismissed the contractual claim because Global was not a third party beneficiary. We now affirm the judgment entered against Global.

## FACTS

In April 1973, the County retained Kennedy to design, plan, and supervise construction of the Sekiu–Clallam Bay sewerage system for Clallam County Utility Improvement District 73–1. In late 1974, the County contracted with Del Guzzi Construction Co., Inc., for construction of the project. Seventy–five percent of the funding for construction was obtained from the Environmental Protection Agency (EPA), 15 percent from the Washington Department of Ecology, and the balance was borne by the County.

In the original bidding, Del Guzzi was the low bidder; but due to an error, Del Guzzi subsequently informed the County that an additional $400,000 would be needed for removing trench excavation material and backfilling the trenches with material that would meet compaction density requirements. The County then rejected all bids and rebid the project to include the extra costs for soil removal and compaction. Del Guzzi again was the low bidder.

To obtain federal funding, minority participation was required. Subsequently, in February 1975, Del Guzzi subcontracted with Global. Global began work in March and by September became aware that its compaction effort was unsatisfactory. Global also discovered that Del Guzzi had identical compaction problems prior to the signing of Global's subcontract, and that Del Guzzi knew the native trench material would not compact to the required specifications.

In early 1976, Global began to compile its extra costs for the removal, replacement and recompaction efforts. In the fall of 1976, Global submitted a change order request to the County and Kennedy, pursuant to the contract provisions set forth in the prime contract between the County and Del Guzzi. The subcontract between Global and Del Guzzi pro-

vided, *inter alia,* that Global would be bound by all the terms of the prime contract.

The project was completed by December 1976, and in August 1977 the County and Del Guzzi approved Global's change order request, conditioned on the approval of additional funding by the EPA. All of the parties protected themselves by hold harmless agreements, providing that the submission of the change order request was not an acknowledgement of liability or a waiver of any defenses.

In May 1978, the EPA tentatively informed Global it would deny its request. Nevertheless, Global submitted further information to the EPA, and attempted other contact with EPA officials in Washington, D.C. Neither of these efforts proved fruitful.

In November 1978, Del Guzzi filed a complaint for damages against Global in the sum of $77,147.20 for expenses incurred in completing a portion of Global's contract. In April 1979, the EPA formally rejected Global's request and recommended that other means of recovery be instituted.

In April 1980, Global answered Del Guzzi's complaint by admitting that Del Guzzi had incurred certain expenses in assisting Global in completion of the contracts in question, but denied that Del Guzzi was damaged in the amount of $77,147.20. Further, Global counterclaimed for cost overruns in the amount of $334,799.82, plus 10 percent for profit. Global also commenced a third party action for negligence and breach of contract against the County and Kennedy. Global contended the County knew of Global's lack of experience, and therefore the County owed it a higher degree of duty. Furthermore, Global argued that Kennedy, as the County's agent, drafted specifications that permitted use of native fill material and thereby warranted that such material would be acceptable.

In May 1982, the County and Kennedy moved for summary judgment against Global. On May 26, 1982, Global filed a motion for leave to amend its answer, counterclaim and third party complaint against the County, Kennedy and Del Guzzi.

Following the June 4 summary judgment hearing, the court issued a memorandum opinion dismissing Global's claims. The court dismissed Global's tort claim on the ground Global had failed to toll the applicable statute of limitation. The court dismissed Global's contract claim because Global was not a third party beneficiary of either the contract between Kennedy and the County or the contract between the County and Del Guzzi.[1] The court also denied Global's motion to amend its pleadings. Global filed a notice of appeal with the Court of Appeals. The case was transferred to this court pursuant to RAP 4.3.

## I

Summary judgment is appropriate "if the pleadings, depositions . . . and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985).

On review of summary judgment, we place ourselves in the position of the trial court, assuming facts most favorable to the nonmoving party, in this case Global. *Hartley*, at 774. Additionally, the burden is on the moving party to prove there is no genuine issue as to a fact which could influence the outcome at trial. *Hartley*, at 774. Because the facts of this case are basically undisputed, the question we must determine is whether the County and Kennedy were entitled to judgment as a matter of law.

## II

The first issue for the court is whether Global's negligence action against the County and Kennedy is barred by the builder limitation statute, RCW 4.16.310. Initially, we must determine if Global's claim falls within the parameters of RCW 4.16.300, which provides:

---

[1] On March 15, 1984, Del Guzzi transferred and conveyed to Global all of Del Guzzi's right, title, interest, claims and demand in any and all claims and causes of action it had or may have had against the County and Kennedy.

RCW 4.16.300 through 4.16.320 shall apply to all claims or causes of action of any kind against any person, arising from such person having constructed, altered or repaired any improvement upon real property, or having performed or furnished any design, planning, surveying, architectural or construction or engineering services, or supervision or observation of construction, or administration of construction contracts for any construction, alteration or repair of any improvement upon real property.

Because Global's negligence claim against the County and Kennedy arose from engineering services performed in the construction of the Sekiu–Clallam Bay sewerage project, its claim clearly is within the activities prescribed by RCW 4.16.300.

We must next determine whether Global's claim for negligence is barred by RCW 4.16.310, which provides in pertinent part:

All claims or causes of action as set forth in RCW 4.16.300 shall accrue, and the applicable statute of limitation shall begin to run only during the period within six years after substantial completion of construction, or during the period within six years after the termination of the services enumerated in RCW 4.16.300, whichever is later. . . . Any cause of action which has not accrued within six years after such substantial completion of construction, or within six years after such termination of services, whichever is later, shall be barred . . .

■ RCW 4.16.310 requires a 2–step analysis for computing the accrual of a cause of action arising from the construction, alteration, or repair of any improvement to real property. First, the cause of action must accrue within 6 years of substantial completion of the improvement; and second, a party then must file suit within the applicable statute of limitation, depending on the type of action. In this case, the 3–year statute of limitation under RCW 4.16-.080(2) governs Global's injury suffered as a consequence of alleged negligent engineering services. If the cause of action does not accrue within 6 years of substantial completion, RCW 4.16.310 absolutely bars the commencement of suit.

*Bellevue Sch. Dist. 405 v. Brazier Constr. Co.,* 103 Wn.2d 111, 119, 691 P.2d 178 (1984).

In the present case, it is uncontroverted that substantial completion of the project occurred in December 1976. Accordingly, RCW 4.16.310 requires Global's cause of action to have accrued within 6 years of December 1976, and suit to have commenced within 3 years of accrual. The determinative issue is when Global's cause of action in negligence accrued.

We have interpreted "accrue" under RCW 4.16.300 and .310 to mean "discovery". *Bellevue,* at 119. Under the discovery rule, "a cause of action accrues at the time the plaintiff knew or should have known all of the essential elements of the cause of action." *White v. Johns–Manville Corp.,* 103 Wn.2d 344, 348, 693 P.2d 687 (1985). "Actual loss or damage" is an essential element in establishing the traditional elements for a cause of action in negligence. *Gazija v. Nicholas Jerns Co.,* 86 Wn.2d 215, 219, 543 P.2d 338 (1975). It is this element of negligence which is presently disputed.

■ Global argues that the negligent failure to design accurate plans and specifications occurred prior to completion of the project, but no "actual loss or damage" was suffered until May 1978, when the EPA tentatively rejected its request for reimbursement for cost overruns incurred during construction. Consequently, Global contends discovery occurred in May 1978, and that when it filed its complaint in April 1980, it was well within the 3–year statute of limitation. We disagree.

The record indicates that by December 1976 Global knew of the inability to compact the native soil, actually performed the recompaction work, and computed its damages. Thus, Global clearly suffered actual loss or damage by December 1976, and not in May 1978 when the EPA rejected Global's request for additional compensation. Global was required by RCW 4.16.080(2) to have filed its complaint by December 1979, 3 years from the date of discovery. However, Global filed its complaint on April 23,

1980, well beyond the 3–year statute of limitation.

Further, in reviewing the record, there is no statutory or contractual prohibition which prevented Global from instituting an action at any time within the period prescribed by the statute of limitation. In fact, the record indicates that Global overlooked the preservation of its claim in superior court. Global admittedly knew by May 1, 1978, that its request had been rejected by the EPA, and thereby had over 1½ years to initiate litigation. Accordingly, Global's tort action is barred by the statute of limitation and was properly dismissed by the trial court.

### III

Global argues, however, that the County and Kennedy should be estopped from using the statute of limitation as a defense, because they encouraged Global to satisfy its cost overrun by applying to the EPA for additional compensation.

Estoppel will preclude a defendant from asserting the statute of limitation when his actions have *fraudulently* or *inequitably* invited a plaintiff to delay commencing suit until the applicable statute of limitation has expired. *Central Heat, Inc. v. Daily Olympian, Inc.*, 74 Wn.2d 126, 443 P.2d 544, 44 A.L.R.3d 750 (1968). The record before us does not indicate that the County or Kennedy engaged in fraudulent or inequitable actions which invited Global to delay commencing suit until the statute of limitation had expired. Although submission of the change order to the EPA initially may have detained Global from filing, Global admittedly knew by May 1, 1978, that its request had been rejected, and thereby had over 1½ years to initiate litigation. Consequently, the County and Kennedy are not estopped from asserting the statute of limitation as a defense.

### IV

In addition to its tort claim, Global alleges the County and Kennedy breached certain contractual duties, such a the duty to provide accurate and suitable specifications.

Global asserts that because the project required minority participation in order to receive federal funding, it is entitled to pursue its contractual claims as a third party beneficiary of the contracts between the County and Kennedy and between the County and Del Guzzi.

■ The Court of Appeals in *Postlewait Constr., Inc. v. Great Am. Ins. Cos.,* 41 Wn. App. 763, 706 P.2d 636, *review granted,* 104 Wn.2d 1025 (1985) recently enunciated the well established rule regarding third party beneficiaries:

> [C]reation of a third–party beneficiary contract requires that the *parties intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract.*

(Some italics ours.) *Postlewait,* at 765 (quoting *Burke & Thomas, Inc. v. International Org. of Masters,* 92 Wn.2d 762, 767, 600 P.2d 1282 (1979)). *See also Lonsdale v. Chesterfield,* 99 Wn.2d 353, 361, 662 P.2d 385 (1983); *Simons v. Tri–State Constr. Co.,* 33 Wn. App. 315, 655 P.2d 703 (1982).

This court defined the "intent" necessary to create a third party beneficiary contract in *Vikingstad v. Baggott,* 46 Wn.2d 494, 282 P.2d 824 (1955). The court stated:

> "If the terms of the contract *necessarily require the promisor to confer a benefit upon a third person,* then the contract, and hence the parties thereto, *contemplate a benefit to the third person . . .* The 'intent' which is a prerequisite of the beneficiary's right to sue is 'not a desire or purpose to confer a particular benefit upon him,' nor a desire to advance his interests, but an *intent that the promisor shall assume a direct obligation to him. . . .* So long as the contract necessarily and directly benefits the third person, it is immaterial that this protection was afforded him, not as an end in itself, but for the sole purpose of securing to the promisee some consequent benefit or immunity. *In short, the motive, purpose, or desire of the parties is a quite different thing from their intention. . . .*"

(Some italics ours.) *Vikingstad,* at 496–97 (quoting 81 A.L.R. 1271, 1287 (1932)).

The court in *Lonsdale v. Chesterfield, supra,* concluded

that in its simplest form, *Vikingstad* required that the court "not examine the minds of the parties, searching for evidence of their motives or desires. Rather, [it] must look to the terms of the contract to determine whether performance under the contract would necessarily and directly benefit the petitioners." *Lonsdale,* at 362. *Accord, Grand Lodge of Scandinavian Fraternity of Am., Dist. 7 v. United States Fid. & Guar. Co.,* 2 Wn.2d 561, 569, 98 P.2d 971 (1940).

The contract between the County and Kennedy indicates that Kennedy promised to provide plans and specifications and oversee all phases of design and construction of the sewerage project. The County in turn promised to pay Kennedy for these services. Neither Kennedy nor the County intended at the time they entered into the contract that Kennedy would assume a direct obligation to Global. Kennedy's obligations ran exclusively to the County and any benefits derived by Global from this contract are incidental. An incidental beneficiary acquires no right to recover damages for nonperformance of the contract. Restatement of Contracts § 147 (1932). *See generally Detweiler Bros., Inc. v. John Graham & Co.,* 412 F. Supp. 416 (E.D. Wash. 1976).

As for the construction contract between the County and Del Guzzi, nothing reveals an intent on the part of the County to assume a direct obligation to Global. The mere fact that the project required minority participation in order to receive federal funding does not manifest an intent that the County would assume a direct obligation to Global. Minority participation prevents discrimination in employment and advances minority participation generally. However, it does not create an intention by either the County or Kennedy to directly benefit Global, either by performance or payment under the contract. Accordingly, Global is not an intended beneficiary and cannot maintain a contractual claim against Kennedy or the County as a third party beneficiary. The trial court properly dismissed Global's contractual claims.

## V

On May 26, 1982, a little more than a week before the summary judgment hearing, Global filed a motion for leave to amend its pleadings. The trial court denied Global's motion on the basis that the amendment would unduly prejudice the nonmoving parties. Global contends the trial court abused its discretion by denying its motion because the adverse parties would not have been prejudiced, and because Global's request to amend was based upon newly discovered information.

A motion to amend pleadings is governed by CR 15(a) which states: "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." In *Caruso v. Local 690, Int'l Bhd. of Teamsters,* 100 Wn.2d 343, 670 P.2d 240 (1983), we discussed the objective of CR 15:

> The purpose of pleadings is to "facilitate a proper decision on the merits", *Conley v. Gibson,* 355 U.S. 41, 48, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957), and not to erect formal and burdensome impediments to the litigation process. Rule 15 of the Federal Rules of Civil Procedure, from which CR 15 was taken, "was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result." *United States v. Hougham,* 364 U.S. 310, 316, 5 L. Ed. 2d 8, 81 S. Ct. 13 (1960). CR 15 was designed to facilitate the same ends.

*Caruso,* at 349. As stated by this court, "[t]he touchstone for denial of an amendment is the prejudice such amendment would cause the nonmoving party." (Citations omitted.) *Caruso,* at 350. The court in *Caruso* further stated: "A trial court's action in passing on a motion for leave to amend will not be disturbed on appeal except for a manifest abuse of discretion or a failure to exercise discretion." (Citations omitted.) *Caruso,* at 351.

The record indicates the court attempted to protect the nonmoving parties, Clallam County, Kennedy Engineers and Del Guzzi, from an untimely and unfair amendment to the pleadings. Because the trial judge based his decision

upon the "touchstone for denial of an amendment", *i.e.,* prejudice, the trial court's denial was not a manifest abuse of discretion or a failure to exercise discretion, and therefore should not be disturbed on appeal.

## VI

Kennedy requests this court to impose sanctions against Global pursuant to RAP 18.9(a), on the ground Global's appeal is frivolous. An appeal is frivolous when the appellate court is convinced that it presents no debatable issues upon which reasonable minds might differ and it is so devoid of merit that there is not reasonable possibility of reversal. *Griffin v. Draper,* 32 Wn. App. 611, 615–16, 649 P.2d 123 (1982). We think this appeal presents debatable issues upon which reasonable minds *might* differ, and is not devoid of merit. Therefore, sanctions should not be imposed.

The judgment of the trial court is affirmed.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.