[No.. 12363-4-III.    Division Three.    March 10, 1994.]
DUANE L. MUNN, ET AL, *Appellants,* v. MUTUAL OF
ENUMCLAW INSURANCE COMPANY, *Respondent.*

*Mark D. Watson, Walter G. Meyer,* and *Meyer, Fluegge & Tenney,* for appellants.

*Francois X. Forgette* and *Raekes, Rettig, Osborne, Forgette & O'Donnell,* for respondent.

SWEENEY, J. — Duane and Susan Munn (Munn) appeal the summary judgment granted Mutual of Enumclaw Insurance Company (MOE). Munn brought a declaratory judgment action to determine the extent of MOE's coverage for damage to a potato crop caused by a chemical applied by aircraft. MOE's policy excluded "property damage arising out of any substance released or discharged from any aircraft". The exclusion had been modified by an endorsement affording $25,000 coverage for property damage arising out of "aircraft spraying operations when performed by independent contractors hired by the Named Insured" (aircraft spray endorsement). MOE paid the $25,000 pursuant to this endorsement.

Munn contends the aircraft exclusion does not apply to the facts in this case because the real cause of the loss was miscommunication and not aerial application of the chemical. We disagree and affirm.

I

FACTS

A. Lease and Settlement Agreement. Shirl Moon Ranch, Inc. (Moon), leased farmland in Benton County; it then subleased a parcel to Munn. Under the terms of the sublease, they rotated possession of the land: on alternating years, Moon grows wheat and Munn grows potatoes. They also agreed that use of the herbicide Finesse, commonly used in wheat production, was forbidden because of its adverse effects on potatoes.

Due in part to Moon's "faulty communications", Farmboy Spray Company, an independent contractor hired to spray Moon's crops, applied Finesse aerially to Moon's wheat crop. The following year during Munn's possession, his potato crop was severely damaged by traces of the herbicide remaining in the soil from Moon's wheat rotation.

Munn sued Moon and Moon joined Farmboy. A settlement agreement was subsequently negotiated in which MOE agreed the damages suffered by Munn totaled $175,000. Farmboy agreed to pay a total of $95,000 in exchange for a release. MOE agreed to pay $25,000 pursuant to its aircraft spray endorsement. Because further coverage by MOE was disputed, the parties agreed that Moon (MOE's insured) would assign its interest in any further insurance proceeds to Munn. Munn would then bring a declaratory action to determine the extent of MOE's additional coverage. By the terms of the release and settlement agreement, the issue presented was whether coverage would be limited to the $25,000 provided by the aircraft spray endorsement. If not so limited, MOE agreed to increase its payment to Munn from $25,000 to $75,000 (increasing the total payment to Munn to $170,000).

B. <u>Coverage</u>. The MOE policy contained the following language:

**EXCLUSIONS SECTION II**

This policy does not apply:

. . . .

**3. Under Coverage G — Personal Liability**

. . . .

g. to property damage arising out of any substance released or discharged from any aircraft.

The policy also had a "Limited 'Aircraft Spraying by Others' Endorsement", which provided in relevant part:

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to Section II, Coverage G — Personal Liability.

In consideration of an additional premium of $35.00 . . ., it is agreed that Exclusion (3.g.) under Coverage G — Personal Liability, "to property damage arising out of any substance released or discharged from any aircraft," shall not apply to loss arising out of aircraft spraying operations when per-

formed by independent contractors hired by the Named Insured [Moon].

It is further agreed that such coverage as is afforded by this endorsement shall not exceed $25,000 in any one policy year.

After Munn filed the declaratory judgment action, both parties moved for summary judgment. The trial court granted summary judgment for MOE. Munn appealed.

MOE's motion on the merits was granted by this court's commissioner on February 19, 1993. We now consider Munn's motion to modify the commissioner's ruling.

## II

### DISCUSSION

Munn contends the limited endorsement and its $25,000 cap on coverage is irrelevant because the exclusion under the basic farm owners policy for property damage arising out of any substance released or discharged from any aircraft does not apply. He argues the "arising out of" language of the exclusion applies only to risks and losses peculiar to aerial application. Because the cause of damage here was faulty communication before application, Munn asserts the aerial application in no way contributed to producing the injury, so the exclusion is inapplicable. *See, e.g., Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 593 P.2d 156 (1979); *Jones v. Strom Constr. Co.*, 84 Wn.2d 518, 527 P.2d 1115 (1974); *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.*, 14 Wn. App. 541, 543 P.2d 645 (1975), *review denied*, 87 Wn.2d 1003 (1976).

When reviewing a summary judgment, we engage in the same inquiry as the trial court. *Higgins v. Stafford*, 123 Wn.2d 160, 168, 866 P.2d 31 (1994). The construction of an insurance contract is a question of law. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480, 687 P.2d 1139 (1984). Since the facts are essentially undisputed, the question is whether MOE was entitled to judgment as a matter of law. *Del Guzzi Constr. Co. v. Global Northwest Ltd.*, 105 Wn.2d 878, 882, 719 P.2d 120 (1986).

An insurance policy should be given a fair, reasonable, and sensible construction consonant with the apparent object

and intent of the parties. *Sears v. Grange Ins. Ass'n*, 111 Wn.2d 636, 638, 762 P.2d 1141 (1988). Generally, exclusionary clauses are construed against the insurer. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wn.2d 65, 68, 659 P.2d 509 (1983), *modified in part on reconsideration*, 101 Wn.2d 830, 683 P.2d 186 (1984). The meaning of an exclusion must be determined from viewing the policy as a whole, not in isolated segments read independently. An exclusionary clause is to be harmonized with coverage provisions, if possible. *Farmers Ins. Co. v. Clure*, 41 Wn. App. 212, 215, 702 P.2d 1247 (1985).

■ In automobile policies, "arising out of the use" of a vehicle has been interpreted to mean " 'the vehicle itself or permanent attachments to the vehicle causally contributed in some way to produce the injury.' " *Mutual of Enumclaw Ins. Co. v. Jerome*, 122 Wn.2d 157, 162, 856 P.2d 1095 (1993) (quoting *Transamerica*, at 26). But the exclusion here precludes coverage for losses arising out of *any substance released from an aircraft*, not arising out of the *use of the aircraft*. The phrase "arising out of" is unambiguous and has a broader meaning than "caused by" or "resulted from". *Toll Bridge Auth. v. Aetna Ins. Co.*, 54 Wn. App. 400, 404, 773 P.2d 906 (1989). It ordinarily means "originating from", "having its origin in", "growing out of", or "flowing from". *Krempl v. Unigard Sec. Ins. Co.*, 69 Wn. App. 703, 707, 850 P.2d 533 (1993) (quoting *Toll Bridge Auth.*, at 404). "Arising out of" does not mean "proximately caused by". *Toll Bridge Auth.*, at 407. Proximate cause is thus not a necessary prerequisite to coverage under the policy, *Everett v. American Empire Surplus Lines Ins. Co.*, 64 Wn. App. 83, 89, 823 P.2d 1112 (1991), nor to the applicability of an exclusion, as asserted by Munn.

MOE's exclusion applies when property damage originates from, flows from, has its origins in, or grows out of any substance, *i.e.*, Finesse, released or discharged from any aircraft, which is precisely what happened here. The MOE policy therefore provides no coverage beyond that afforded by the limited endorsement.

■ Our holding is further supported when the exclusion is read in conjunction with the limited endorsement. If

exclusion 3.g. did not mean coverage was excluded for property damage arising from aerial spraying, the limited endorsement is rendered meaningless, as it would purport to provide, for an additional premium, coverage which was already afforded. The result would be absurd. *See Southern Farm Bur. Cas. Ins. Co. v. Adams*, 570 S.W.2d 567 (Tex. Civ. App. 1978). On the other hand, the construction offered by MOE harmonizes the exclusion and the limited endorsement, giving effect to both. *Clure*, at 215. Damage to Munn's potato crop "originated in" and "flowed from" the herbicide and its application on the field. MOE's liability is limited to the $25,000 coverage for aircraft spray operations for which it bargained. The trial court properly granted summary judgment to MOE determining no further coverage was afforded under the policy.

Munn cites cases from other jurisdictions which apply industrial insurance statutes and limit workers' compensation benefits to injuries arising out of employment. He contends, by analogy, these cases support the proposition that in order for damages to arise out of an activity, they must be caused by a particular increased risk associated with that activity. *See, e.g., Brady v. Industrial Comm'n*, 192 Ill. App. 3d 1, 8, 548 N.E.2d 441, 446 (1989) (injury arising out of employment means an injury which "has its origin in some risk connected with or incidental to the employment . . ."), *aff'd*, 143 Ill. 2d 542, 578 N.E.2d 921 (1991); *Otto v. Moak Chevrolet, Inc.*, 36 Or. App. 149, 153-54, 583 P.2d 594, 596-97 (1978) (injury must arise from risk peculiar to or increased by employment), *review denied*, 285 Or. 319 (1979). Munn asserts the risks peculiar to aircraft spraying operations are limited to the risks of spray drift and aerial misidentification; none of which are at issue here. We disagree. Clearly, another risk of aircraft spraying operation is misapplication such as occurred here.

Munn's remaining contentions that the pollution and assumed liability exclusions in the MOE policy do not apply need not be addressed in light of our holding.

The motion to modify the commissioner's ruling is denied; the trial court's summary judgment is affirmed.

THOMPSON, C.J., and SCHULTHEIS, J., concur.

Review denied at 124 Wn.2d 1030 (1994).