FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 OCT 30 AM 11: 55



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KING AND MOCKOVAK EYE CENTER, INC., P.S., a Washington professional service corporation; and CLEARLY LASIK, INC., a Nevada corporation, | ) ) ) ) ) | No. 74544-1-I |
| Respondents, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| MICHAEL MOCKOVAK, M.D., an individual, | ) ) ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) ) | FILED: October 30, 2017 |

MANN, J. — This matter arises from a business dispute between former business partners Dr. Michael King and Dr. Michael Mockovak. King and Mockovak, acting through their jointly owned corporations King and Mockovak Eye Center, Inc. (KMEC) and Clearly Lasik, Inc., successfully owned and operated multiple Lasik eye surgery clinics in the United States and Canada. After the 2008-09 recession, King, Mockovak, and their companies were deeply in debt. In 2009, Mockovak was charged and later convicted of attempting to arrange the murder of King in order to collect on an insurance policy. After years of litigation between King, Mockovak, and their former companies, in

December 2015, a jury returned a verdict in favor of King on some of his claims and rejected all of Mockovak's claims.

Mockovak appeals arguing the trial court erred by (1) allowing the jury to decide the value of his shares in KMEC, (2) failing to strike potential jurors for actual bias, (3) failing to give two curative jury instructions, (4) failing to grant a new trial for misconduct during closing argument, and (5) allowing the jury to decide if there was a partnership agreement. King cross appeals and argues that the trial court erred by (1) failing to allow the jury to determine damages for breach of the partnership agreement and (2) allowing a pretrial amendment adding a claim for breach of fiduciary duty.

We affirm in part, reverse in part, and remand.

## FACTS

### Background

In November 2009, King and Mockovak were partners who, through various corporations, jointly owned and operated five Lasik[1] eye surgery practices. Three practices were in Washington (Renton, Vancouver, and Kennewick) and two practices were in Canada (Burnaby, British Columbia and Edmonton, Alberta). The Washington practices were owned by KMEC, a Washington professional service corporation, owned equally by King and Mockovak. Clearly Lasik, a Nevada corporation, owned a Canadian corporation that owned the Edmonton practice. Clearly Lasik was owned equally by King and Mockovak as was a separate Canadian corporation that owned the Burnaby practice.

---

[1] Lasik stands for laser in-situ keratomileusis; it is a surgery used to correct vision in people who are near-sighted, far-sighted, or have astigmatism.

-2-

Before 2009, Clearly Lasik also owned and operated eye surgery practices in Wisconsin, Idaho, Oregon, and Nevada. During the 2008-09 recession, however, demand for elective eye surgeries declined and these practices were closed. Despite selling the out of state practices, by the end of 2009, KMEC and Clearly Lasik were more than $2.8 million in debt. Mockovak and King were both licensed to practice in Washington, only King was licensed in Canada. This meant that King performed all of the surgeries in Canada and was constantly traveling. Despite this work load, King performed more surgeries than Mockovak. By October 2009, the practices owed Mockovak $487,873 and King $907,489 in back pay.

In late 2009, King and Mockovak decided to part ways. They scheduled arbitration to divide the business assets for late December. Prior to the scheduled arbitration, however, the FBI arrested Mockovak for trying to arrange King's murder. The plan was to kill King and collect on a $4 million key-man life insurance policy on King's life.[2] During his release on bail, Mockovak withdrew $100,000 from the KMEC bank account. This withdrawal overdrew the account and left the businesses unable to pay its staff and bills.

Mockovak never practiced again. His medical license was suspended in January 2010 and permanently revoked in March 2012. A jury found Mockovak guilty of attempted murder and attempted theft. He was sentenced to 20 years in prison.

---

[2] See King v. Mockovak, No. 66924-9-I, slip op. (unpublished) (Wash. Ct. App. May 20, 2013), http://www.courts.wa.gov/opinions/pdf/669249.pdf.

After Mockovak's arrest, King formed King Lasik. King owns 100 percent of King Lasik. King used income from King Lasik to service the debts of KMEC and Clearly Lasik. By the time trial in this matter began, King had paid $1.4 million of the debts.

*Pretrial Procedure*

Two separate civil actions were subsequently filed against Mockovak. First, KMEC and Clearly Lasik sued Mockovak seeking damages and an injunction enjoining Mockovak from withdrawing funds, selling assets, and interfering with the business. Shortly thereafter, the King family separately sued Mockovak for negligent infliction of emotional distress and solicitation for first degree murder (King family action). Both civil actions were stayed pending Mockovak's criminal trial and appeals.

After Mockovak's conviction, KMEC and Clearly Lasik moved for partial summary judgment and Mockovak moved for dismissal of all claims. The trial court denied both motions. In doing so, the court ruled that Mockovak's "criminal convictions are facts established for purposes of proving whether there was a breach of duty by [Mockovak]."

Mockovak then successfully moved to dismiss the King family action. After the case was dismissed, the King family moved to amend the complaint to add claims for unjust enrichment and intentional injury to others under the Restatement (Second) of Torts § 870 (Am. Law Inst. 1977). The motion for leave to amend was denied.[3]

Mockovak then filed third-party claims adding King, King Lasik, and Christian Monea (the chief executive officer for KMEC and Clearly Lasik) as third-party defendants. Mockovak asserted third-party claims for (1) fraud by King and Monea (by

---

[3] The Kings appealed that ruling, but this court held that the appeal was untimely. King v. Mockovak, No. 67479-0-I, 2013 WL 619545, at *2 (Wash. Ct. App. Feb. 19, 2013).

Mockovak individually), (2) breach of fiduciary duty by King and Monea (on behalf of Mockovak, KMEC, and Clearly Lasik), (3) conversion by the third-party defendants (on behalf of Mockovak, KMEC, and Clearly Lasik), (4) unjust enrichment by the third-party defendants (on behalf of Mockovak, KMEC, and Clearly Lasik), and (5) conspiracy by the third-party defendants (on behalf of Mockovak, KMEC, and Clearly Lasik).

King, now a third-party defendant, filed counterclaims against Mockovak for (1) intentional injury to others under Restatement (Second) of Torts § 870, (2) unjust enrichment, and (3) breach of the partnership contract. King sought business related damages and personal damages for emotional distress.[4]

Both parties filed cross motions for summary judgment. Mockovak moved to dismiss King's counterclaims, arguing that they were barred by res judicata. The third-party defendants moved to dismiss all of Mockovak's third-party claims except for those against or on behalf of Clearly Lasik. The trial court denied Mockovak's motion to dismiss King's counterclaims. The court dismissed Mockovak's derivative claims filed on behalf of KMEC, concluding that "[i]t was the suspension of Mockovak's medical license that led to his ineligibility to be an owner of the business." The court denied the third-party defendant's motion to dismiss Mockovak's individual claims for fraud, breach of fiduciary duty, conversion, and unjust enrichment. The court also left for trial Mockovak's claims for an ownership interest and recovery against KMEC.

In September 2015, all parties again moved for summary judgment. KMEC argued that because the trial court previously ruled that the suspension of Mockovak's medical license made him ineligible to own shares in KMEC, Mockovak's only remedy

---

[4] King Lasik subsequently joined King's counterclaim for unjust enrichment.

for recovering from KMEC was through the statutory appraisal mechanism for valuing dissenting shareholders' shares under RCW 23B.13.250-.300. The trial court granted the motion "regarding the ownership of KMEC." The trial court also dismissed: (1) King's counterclaim for intentional injury to others under Restatement (Second) of Torts § 870, (2) King and King Lasik's unjust enrichment claim, and (3) KMEC and Clearly Lasik's claim for tortious interference with prospective advantage or business expectancy.

After the court dismissed King's counterclaim for intentional injury to others under Restatement (Second) of Torts § 870, King moved to amend his answer to add a counterclaim for breach of fiduciary duty based on Mockovak's alleged breach of the partnership agreement between King and Mockovak. The court denied King's motion to amend and his motion for reconsideration.

Prior to trial, Mockovak and King stipulated to the facts underlying Mockovak's convictions for solicitation to commit murder, attempted murder, conspiracy to commit theft, and attempted theft. Mockovak then filed a motion in limine to exclude prejudicial evidence or argument regarding Mockovak's criminal conduct, including FBI audio and video surveillance tapes, victim impact statements, and other inflammatory evidence. The court granted Mockovak's motion.

*Trial*

Mockovak's individual claims (fraud, conversion, unjust enrichment, and conspiracy) and his derivative claims on behalf of Clearly Lasik (breach of fiduciary duty, conversion, unjust enrichment, and conspiracy) were tried before the jury. KMEC and Clearly Lasik's claim for breach of fiduciary duty, and King's counterclaim for

breach of the partnership agreement, were also tried before the jury. Both parties called experts who opined on the value of Mockovak's cancelled KMEC shares, the value of the other practices, and damages.

Near the close of King's case, Mockovak moved to dismiss King's counterclaim for breach of contract because it violated the statute of frauds. The court granted this motion in part; the court allowed the jury to decide whether a partnership existed and if it had been terminated, but it did not allow King to seek damages.

At the conclusion of the trial, the jury returned its verdict. It concluded that: (1) Mockovak breached one or more fiduciary duties to KMEC and Clearly Lasik but awarded no damages for the breach, (2) a partnership existed and that Mockovak made it not reasonably practicable to carry on or engaged in wrongful conduct that adversely and materially affected the partnership, and (3) the value of Mockovak's shares in KMEC as of January 27, 2011, was negative $233,584. The jury rejected all of Mockovak's individual claims and his derivative claims on behalf of Clearly Lasik.

After the trial court entered its final judgment, Mockovak moved under CR 59 for a new trial. Before the court denied this motion, Mockovak filed a notice of appeal. The court denied Mockovak's motion and entered a final judgment incorporating the denial. Mockovak then filed an amended notice of appeal. King cross appealed.

ANALYSIS

*Valuation of Cancelled Shares of KMEC*

Mockovak argues that the trial court erred in failing to bifurcate the trial and by allowing the jury to determine the value of Mockovak's cancelled shares of KMEC. Mockovak requests that we reverse and remand for a new trial. While we agree that the

trial court should have determined the valuation of the cancelled shares, the trial court did not abuse its discretion in refusing to bifurcate the trial.

Individuals may hold shares of professional corporations. RCW 18.100.050. If a shareholder becomes ineligible to own shares in a professional corporation, and if a redemption of the ineligible shareholder's shares does not happen within a year from when the shareholder became ineligible, then the ineligible shareholder is deemed to have exercised the right to dissent under chapter 23B.13 RCW. RCW 18.100.116(2). A dissenting ineligible shareholder has a right to payment for the shares in the professional corporation under RCW 23B.13.250. See RCW 18.100.116(2). The shareholder is deemed to have made a written demand on the corporation for payment one year and a day after the corporation's shares were transferred to a shareholder who is ineligible to hold them. See RCW 18.100.116(2). If the dissenter is not paid by the corporation, then the court ultimately determines the fair value of the shares. RCW 23B.13.280.300.

The trial court made two relevant pretrial rulings concerning Mockovak's interest in KMEC. First, in granting summary judgment on Mockovak's derivative claim on behalf of KMEC against King, the trial court concluded: "It was the suspension of [Mockovak's] medical license that led to his ineligibility to be an owner of the business." Second, the trial court granted summary judgment for King on "the ownership of KMEC," ruling that King and Mockovak owned KMEC. The combined effect of the court's pretrial rulings was that (1) Mockovak and King jointly owned KMEC, (2) Mockovak became ineligible to own shares under RCW 18.100.116(2) after his medical

license was suspended on January 26, 2010,[5] and (3) Mockovak was to be paid the fair value of his cancelled shares as of January 27, 2011—one year and one day after he became ineligible to own shares.

One week before trial, Mockovak moved to bifurcate the trial so that the valuation of the cancelled shares would be determined by the court in a separate proceeding. The trial court denied Mockovak's motion. The court explained that the shares' value was "intertwined" with other questions in the case such that the valuation issue "doesn't seem like an appropriate issue to somehow pull out."

The jury valued Mockovak's cancelled shares in KMEC as of January 27, 2011. It found the shares to be worth negative $233,584. This value is one-half of what King's business-valuation expert opined the KMEC was worth on January 27, 2011, under a net-asset valuation approach.[6]

Mockovak is correct that plain language of RCW 23B.13.300 requires the court to make the ultimate valuation decision in a dissenter's rights action under RCW 23B.13.300. The statute states that "the corporation shall . . . petition the court to determine the fair value of the shares and accrued interest." RCW 23B.13.300(1). The statute further provides that the "jurisdiction of the court . . . is plenary and exclusive." RCW 23B.13.300(4). In Eagleview Tech, Inc. v. Pikover, this court confirmed that "[t]he court makes the ultimate valuation decision in a dissenter's rights action." 192 Wn. App. 299, 308, 365 P.3d 1264 (2015). The statute and case law are clear that courts make

_____

[5] It is undisputed that Mockovak's license to practice medicine was suspended on January 26, 2010.

[6] King's witness valued the full value of the KMEC shares on January 27, 2011, at negative $467,188. Half of this would be negative $233,594—which is $10 less than what the jury awarded to Mockovak—negative $233,584.)

the ultimate valuation decision in a dissenter's rights action. The trial court erred in allowing the jury to determine the valuation of Mockovak's cancelled shares in KMEC.

The trial court did not, however, abuse its discretion in denying Mockovak's motion to bifurcate the proceedings. CR 42(b) allows a court to separate claims into different trials. "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim." CR 42(b). "The denial of a motion to bifurcate will not be disturbed absent a showing of abuse of the trial court's discretion." Jensen v. Beaird, 40 Wn. App. 1, 20, 696 P.2d 612 (1985).

The trial court here determined that valuation of the shares was "intertwined" with other questions in the case. After the close of evidence, the court confirmed its determination that it "[had] no idea how that could be a separate bifurcated phase now when I have seen all of the evidence." The court's decision to hear all intertwined issues during a single trial is not an abuse of discretion. The civil rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." CR 1. The court did not err in hearing all evidence at the same time. Consistent with RCW 23B.13.300, however, after the close of evidence the trial court should have determined the valuation of the shares.

On remand, a new trial on the value of the cancelled shares in KMEC is not necessary. The trial court should issue its valuation based on the evidence already presented at trial.

*Potential Jury Bias*

Mockovak asserts the trial court erred by failing to strike potential jurors who demonstrated actual bias regarding Mockovak's conviction. We disagree.

We review a trial court's ruling on a challenge for cause for manifest abuse of discretion. State v. Davis, 175 Wn.2d 287, 312, 290 P.3d 43 (2012). "The reason for this deference is that the trial judge is able to observe the juror's demeanor and, in light of that observation, to interpret and evaluate the juror's answers to determine whether the juror would be fair and impartial." Davis, 175 Wn.2d at 312. When a challenge for cause is based on alleged bias, the trial court must determine "'whether a juror with preconceived ideas can set them aside' and decide the case on an impartial basis." State v. Grenning, 142 Wn. App. 518, 540, 174 P.3d 706 (2008) (quoting State v. Noltie, 116 Wn.2d 831, 839, 809 P.2d 190 (1991)).

After it was disclosed during voir dire that Mockovak was convicted of attempted murder, Mockovak's counsel asked the jury pool

> If the crime in this case is attempted murder of the other business person
> in this business dispute, would you have difficulty being fair in resolving
> the business dispute in favor of the person who sits in prison?

Thirty-two potential jurors agreed that they would have difficulty being fair. Mockovak challenged all for cause. The court declined to rule based on the minimal inquiry.

Juror 27 stated that he would have "a very hard time" awarding the criminal money when the criminal "definitely harmed the business." Thirty jurors agreed with juror 27's statement. When asked if any other jurors agreed with juror 27's feeling that

Mockovak needed to overcome a presumption that the business was harmed by his criminal conduct, 24 jurors agreed.

King's counsel conducted the following inquiry:

[COUNSEL:] Now, if Judge Chun instructs you that in this case there is evidence of serious intentional criminal misconduct against Dr. King, but he also instructs you that as officers of the court, it is your duty to follow the law in a fair and impartial way, doesn't mean that you don't hold someone accountable. It means you follow the law. Would you be able to follow the instructions of the court? Raise your cards if you agree?

COURT: For the record, it looks like virtually everyone is holding up their cards, but I am not sure.

[COUNSEL:] I will ask the reverse question for that reason, Your Honor. Is there anyone who says "I don't think that I could follow the judge's instructions under circumstances where one of the parties to a civil dispute was suing for money has committed a crime as serious as attempted murder in the first degree. I cannot follow the judge's instruction."? Any one who says that they can't follow the instructions of the court? Now, is there a —

COURT: For the record, I don't think that anyone raised their card.

Later, King's counsel specifically inquired of juror 3:

I mean, it is a fact of the case that Mr. Mockovak is convicted of attempted murder in the first degree, and some other crimes. Do you believe that you can hear all of the evidence in the case, which will come through exhibits and witnesses and consider the instructions given by Judge Chun and follow the law including the fact of the conviction?

When juror 3 responded, "I can follow the law, but I have a bias," he was excused for cause without objection.

The trial court then asked the jury pool two follow-up questions:

Would you please raise your cards for me, if based on everything that you have heard thus far, you simply feel that you cannot be fair and impartial in this case? Now I will ask it another way—nobody has raised their card. I [will] ask it another way. You are required to be fair and impartial. Based on what you have heard, including about the conviction, do you feel that

you simply cannot be fair and impartial in this case? If so, please raise your card. All right. Next question. No one raised their cards.

Mockovak's counsel followed up by asking the remaining jury pool if anyone agreed with juror 3. No other potential juror agreed.

Mockovak argues that the court abused its discretion in denying his motion to strike all jurors that exhibited bias. We disagree. Here, the court was in the best position to observe jury bias and it saw none. Although the record shows the possibility of prejudice against Mockovak, the record also shows that the jurors could try the cause impartially. Mockovak argues that the court's group inquiry, as opposed to individual inquiry, was inadequate. Again, we disagree. While individual voir dire may better ferret out biases and allow counsel to rehabilitate a juror who appears biased, failing to conduct individual voir dire is not improper. Here, the court explained that at first it could not tell whether the jurors' responses indicated bias. But as the questioning continued, it became clear that the jurors could be impartial. Given the court's explanation, denying Mockovak's challenge was not an abuse of discretion.

*Proposed Jury Instructions*

Mockovak argues that the trial court erred in failing to give two curative instructions concerning Mockovak's constitutional rights and evidence of his conviction. We disagree.

"Whether to give a particular instruction to the jury is a matter within the discretion of the trial court." Stiley v. Block, 130 Wn.2d 486, 498, 925 P.2d 194 (1996). Thus, a trial court's refusal to give a requested instruction is reviewed "only for abuse of discretion." Stiley, 130 Wn.2d at 498. "Refusal to give a particular instruction is an

-13-

abuse of discretion only if the decision was 'manifestly unreasonable, or [the court's] discretion was exercised on untenable grounds, or for untenable reasons.'" Anfinson v. FedEx Ground Package Sys. Inc., 159 Wn. App. 35, 44, 244 P.3d 32 (2010) (quoting Boeing v. Harker-Lott, 93 Wn. App. 181, 186, 968 P.2d 14 (1998)). "Jury instructions are sufficient if they are supported by the evidence, allow each party to argue its theory of the case, and when read as a whole, properly inform the jury of the applicable law." Fergen v. Sestero, 182 Wn.2d 794, 803 346 P.3d 708 (2015). "No more is required." Anfinson, 159 Wn. App. at 44. Thus, "[i]f a party's theory of the case can be argued under the instructions given as a whole, then a trial court's refusal to give a requested instruction is not reversible error." Anfinson, 159 Wn. App. at 45.

At issue are two of Mockovak's proposed jury instructions. First, during cross-examination of Mockovak, King's counsel asked several questions related to the attempted murder. After the court sustained one objection, Mockovak asked for a curative instruction, claiming that some of the questions put Mockovak in an "embarrassing position" because the stipulation prohibited him from commenting on the convictions. The trial court refused to give an instruction. At the conclusion of the evidence, Mockovak renewed the request and asked that the following curative instruction be given:

> The Court has ruled and the parties have stipulated that Dr. Mockovak's crimes are facts for purposes of this civil trial. Because Dr. Mockovak may not challenge those facts for purposes of this civil trial, you should disregard any argument or testimony regarding the criminal events to which he has not been permitted to respond that are not contained in the parties' stipulation, which is Trial Exhibit 19.

The trial court again refused to give the requested instruction.

Although evidence of Mockovak's crimes leaked into the proceedings, it was reasonable to deny the requested instruction for at least two reasons. First, the instruction favored Mockovak because it told jurors that they "should disregard any argument or testimony regarding the criminal events" because Mockovak "may not challenge those facts for purposes of this civil trial." Instructing the jury that it "should disregard any argument or testimony" was a step too far because it suggested that "any argument or testimony" about the crimes that was not contained in the stipulation automatically ran afoul of the court's ruling to exclude unfairly prejudicial evidence related to Mockovak's crimes. The jury could still consider the effect of Mockovak's crimes on the businesses.

The instruction was also disingenuous because Mockovak himself suggested that he disputed the convictions. For example, when asked if he agreed that trying to steal life insurance proceeds was a breach of his fiduciary duty, Mockovak disputed the crime: "Again, you're referring to what I believe is a conclusion of the criminal court, and for the purposes of the proceedings within these four walls I have—I will certainly follow Judge Chun's order and not dispute that. Beyond that I have no comment." When asked what he meant, Mockovak said: "Well, I'm disputing the conviction outside of these four walls." The trial court explained:

> One of the bases for my concern is that when the witness was essentially asked whether certain conduct, that is, to use [Mockovak's counsel's] words, part of the res judicata order constitutes a breach of fiduciary duty, the witness went off to use the orders in limine as an excuse. I didn't think that question was inappropriate, and there certainly wasn't an objection to that question. And so part of my concern in connection with your request is that it seemed as if the witness [was] using the order as an excuse not to answer the question.

-15-

No. 74544-1-I/16

The trial court did not abuse its discretion in refusing to give the curative instruction.

The second instruction that Mockovak proposed, and the trial court refused, concerned Mockovak's constitutional rights. Mockovak requested the following instruction:

> Mockovak has been convicted of crimes which will be accepted as fact for purposes of this trial. The Washington Constitution's Declaration of Rights provides that "[n]o conviction shall work a corruption of the blood nor forfeiture of the estate." Mockovak seeks to recover damages and the value of his share of the Clearly Lasik® business, which are part of his "estate." You may consider whether Mockovak's conviction had any effect on the value of his "estate," but you may not, under the Washington Constitution's Declaration of Rights, conclude that he has "forfeited" his estate by virtue of his conviction.

The court denied this request, explaining:

> I think that it is an odd instruction. I think that it is irregular. I think that it could cause confusion for the jury. I also think that it is the realm of argument, both sides have made emotional appeals. I am not going to include this instruction.

Again, the court did not abuse its discretion. The court was under no obligation to give confusing, misleading, or argumentative instructions.[7] See, e.g., State v. Rehak, 67 Wn. App. 157, 165, 834 P.2d 651 (1992); Watson v. Hockett, 107 Wn.2d 158, 163, 727 P.2d 669 (1986). Moreover, the absence of the instruction did not stop Mockovak from referring to the constitutional provision during both voir dire and closing argument.

---

[7] 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL, PREFACE (2d ed. 1980).

*Misconduct During Closing Argument*

After trial, Mockovak filed a motion for a new trial pursuant to CR 59(a)(2) arguing that King's counsel committed misconduct during closing argument. Mockovak argues that the trial court erred in denying the motion. We disagree.

We review a trial court's order denying a new trial for abuse of discretion. Aluminum Co. of Am. v. Aetna Cas. & Sur. Co., 140 Wn.2d 517, 537, 998 P.2d 856 (2000) [hereinafter Alcoa]. When the motion for a new trial is based on the alleged misconduct of counsel, the trial court must determine whether "such a feeling of prejudice [has] been engendered or located in the minds of the jury as to prevent a litigant from having a fair trial." Alcoa, 140 Wn.2d at 537 (internal quotations omitted).

Before closing arguments, the trial court advised counsel that he wanted to "minimize the risk of there being objections during closing arguments." The court warned both parties about "going into the realm of Marie Claire [Mockovak's daughter] or something like that, or going to the realm [of] attempted murder, attempted murder, attempted murder, you know what I am talking about." The court continued: "When you go to the emotional distress and that kind of stuff[,] . . . I want to give you the heads up to both of you my antennae [are] going to be up really high on that stuff."

Several times during argument, however, King alluded not only to Mockovak's crimes but also to the emotional distress that they caused King's family. King told the jury that Mockovak had not accepted responsibility for the debts, the warranties, or his crimes.

> The truth, the sad truth, is that Mr. Mockovak is the anti-responsibility man. He has not paid a dime towards the debts. He has not honored a single warranty. He never even thought about making arrangements for

-17-

his patients. He never accepted responsibility for his crimes and worst of all he continues, really, to show no remorse.

Later, he suggested Mockovak pay the corporation's debts: "What would be fair is for Mr. Mockovak to take some responsibility for the debts of the practice that were paid off solely by Dr. King." King concluded by appealing to the juror's humanity and castigating Mockovak's:

> [T]he legal system . . . can't deal with matters of the heart very well, or matters of forgiveness or repentance or those deeper issues of life. It can't do that. It doesn't work well. It can do justice and that is about all that it can do well. . . . But it doesn't have the capacity to address the really deep issues that have surfaced throughout this case—you saw them and felt them. They are profoundly issues of character and need for repentance and change of heart. You can't do that. But you can render a verdict that is just.

Mockovak did not object during King's closing.

A trial court may grant a new trial if the prevailing party or the jury's misconduct materially affects the other party's substantial right. CR 59(a)(2); Alcoa, 140 Wn.2d at 537-38. The party seeking a new trial based on counsel's misconduct must establish that (1) the conduct was misconduct, (2) the misconduct was prejudicial, (3) the misconduct was objected to at trial, and (4) the misconduct was not cured by the court's instructions. Alcoa, 140 Wn.2d at 539; see Teter v. Deck, 174 Wn.2d 207, 226, 274 P.3d 336 (2012) (reaffirming Alcoa). Without an objection to counsel's remarks during closing, misconduct cannot be raised for the first time in a motion for a new trial unless it is so flagrant that no instruction could have cured the prejudice. Sommer v. Dep't of Soc. & Health Servs., 104 Wn. App. 160, 171, 15 P.3d 664 (2001).

Because Mockovak failed to object to King's closing argument, King's conduct must have been flagrant. Here, while King's argument may have strayed beyond

zealous advocacy into topics that the trial court warned against, it was not so flagrant that an objection and instruction could have cured any prejudice. Sommer, 104 Wn. App. at 171. The trial court was well aware of its rulings and the limits on argument. The court warned counsel that its antennae were up for inappropriate argument. Despite this, the court did not interrupt King's argument. "The trial court is in the best position to most effectively determine if counsel's misconduct prejudiced a party's right to a fair trial." Miller v. Kenny, 180 Wn. App. 772, 815, 325 P.3d 278 (2014). The court did not abuse its discretion in denying Mockovak a new trial under CR 59(a)(2).

*Partnership*

In his cross appeal, King argues that the trial court erred in granting Mockovak's CR 50 motion for a directed verdict that the oral partnership between King and Mockovak was void under the statute of frauds and prohibiting King from seeking damages for breach of the contract. In his appeal, Mockovak challenges the trial court's decision to allow the jury to determine if the partnership existed and whether it had been breached due to Mockovak's conduct. We agree with King that the trial court erred in not allowing King to seek damages for breach of contract.

Orders on motions for a directed verdict under CR 50(a) are reviewed de novo. Gomez v. Sauerwein, 180 Wn.2d 610, 616, 331 P.3d 19 (2014). This court also reviews de novo whether a contract satisfies the statute of frauds. Dickson v. Kates, 132 Wn. App. 724, 733, 133 P.3d 498 (2006).

In 2002, King and Mockovak entered into an oral partnership agreement to build an ophthalmological practice together. They agreed to perform surgeries, contribute capital, share in administrative functions, and share debts and profits equally. Together

they opened surgical centers in Washington and Canada and later agreed to expand their practice by opening clinics in Wisconsin, Idaho, Oregon, and Nevada. To make this possible, Clearly Lasik and KMEC leased space, bought equipment, paid clinic operating costs, sometimes using funds provided by bank loans and lines of credit personally guaranteed by the partners. The partners also had contractual obligations to perform warranty surgeries. A patient who had eye surgery at a KMEC or Clearly Lasik clinic could buy a warranty which obligated the practice to perform follow up eye surgery if needed. Under the partnership agreement, the surgeon who performed the original surgery would perform any follow-up treatments.

King testified at trial that after Mockovak's arrest, Mockovak was no longer able to perform his obligations under the partnership including performing surgeries and warranty surgeries, carrying out administrative functions, and failing to pay his share of the partnership's debts. King offered evidence that due to the breach of the partnership agreement, his damages were $153,324 for his payment of Mockovak's share of the partnership debt and $288,146 for the cost of performing warranty surgeries on Mockovak's patients after his arrest. Under the trial court's CR 50(a) ruling, the jury was not allowed to consider these damage claims.

A partnership in Washington is an association of two or more persons to carry on as co-owners a business for profit. RCW 25.05.005(6). A partnership agreement may be written, oral, or implied. RCW 25.05.005(7). A "partnership at will" is a partnership "in which the partners have not agreed to remain partners until the expiration of a definite term or the completion of a particular undertaking." RCW 25.05.005(8). The evidence at trial showed that beginning in 2002 and continuing until Mockovak's arrest,

King and Mockovak participated in a partnership. The jury agreed. There was no evidence that King and Mockovak's partnership was for a defined period of time, or had an expiration date. Thus, it was a partnership at will.

Mockovak argued in his CR 50(a) motion that Washington's statute of frauds applied and thus the partnership was invalid because it was not in writing. RCW 19.36.010 provides in relevant part:

> In the following cases, specified in this section, any agreement, contract, and promise shall be void, unless such agreement, contract, or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him or her lawfully authorized, that is to say: (1) Every agreement that by its terms is not to be performed in one year from the making thereof.[8]

Because the oral partnership involved contractual agreements that could not be performed in one year, Mockovak contends that the agreement was void for a lack of writing. This is incorrect.

Our Supreme Court has long held that the provision of the statute of frauds invalidating an oral agreement that by its terms is not to be performed within one year, is not applicable to oral partnership agreements that are for an indefinite length of time and terminable at will. Malnar v. Carlson, 128 Wn.2d 521, 533-34, 910 P.2d 455 (1996); Davis v. Alexander, 25 Wn.2d 458, 466, 171 P.2d 167 (1946). "If, by its terms, performance is possible within one year, however unlikely that may be, the agreement is not within the statute of frauds; and it is also legally immaterial that the actual period of performance exceeded one year." Malnar, 128 Wn.2d at 534 (citing JOHN D. CALAMARI & JOSEPH M. PERILLO, CONTRACTS § 19-18 (3d ed. 1987)).

---

8 (Emphasis added.)

-21-

The partnership agreement between King and Mockovak was for an indefinite length of time and terminable at will. King and Mockovak formed a partnership to build an ophthalmological practice for profit and the partnership was to continue indefinitely. Because performance of the partnership agreement was possible (though practically unlikely) within one year, the statute of frauds did not apply. Malnar, 128 Wn.2d at 534.

A party damaged by a breach of contract "may recover all damages that accrue naturally from the breach and be returned to 'as good a pecuniary position as he would have had if the contract had been performed.'" Parker v. Tumwater Family Practice Clinic, 118 Wn. App. 425, 431, 76 P.3d 764 (2003) (quoting Eastlake Constr. Co. v. Hess, 102 Wn.2d 30, 39, 686 P.2d 465 (1984) (breach of a partnership agreement created a cause of action for damages)).

Here, the court erred by not allowing King to recover on the contract. Because the contract was enforceable and King suffered damages as a result of the breach, King had a cause of action to recover damages. These damages should have returned him to the position he would have been in had the contract not been breached. See Parker, 118 Wn. App. at 431. The jury found that a partnership existed and that Mockovak engaged in "wrongful conduct that adversely and materially affected the partnership business." The jury should have been allowed to decide if King was entitled to damages.

*Motion to Amend*

King argues that the trial court abused its discretion in denying his motion for leave to file a second amended answer adding a personal claim against Mockovak for breach of fiduciary duty based on the partnership agreement. We disagree.

-22-

Because his right to amend as a matter of course had long expired, King could only amend his pleadings "by leave of [the] court." CR 15(a). Under CR 15(a), leave to amend "shall be freely given when justice so requires." The decision to grant leave lies within the discretion of the trial court. We review a trial court's decision to grant or deny a motion to amend for manifest abuse of discretion. Wilson v. Horsley, 137 Wn.2d 500, 505, 974 P.2d 316 (1999); Caruso v. Local Union No. 690, 100 Wn.2d 343, 351, 670 P.2d 240 (1983). "The trial court's decision 'will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" Wilson, 137 Wn.2d at 505 (quoting State ex rel. Carrol v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

In August 2011, after the King family's lawsuit was dismissed, King added a counterclaim in this matter against Mockovak for intentional injury to others under the Restatement (Second) of Torts § 870. After extensive discovery and briefing, on October 14, 2015—just over one month before trial—the trial court granted Mockovak's motion for summary judgment dismissing King's counterclaim under the Restatement (Second) of Torts § 870. The next day, King moved to amend his counterclaim to add a personal claim against Mockovak for breach of fiduciary duty. King's new counterclaim, based on the partnership agreement between King and Mockovak, requested the same damages, including emotional distress damages, that King sought in his dismissed claim for intentional injury to others under Restatement (Second) of Torts § 870. Mockovak opposed the amendment due to King's undue delay, and due to prejudice because the deadline for seeking additional discovery and summary judgment had passed. The trial court denied King's motion to amend on November 9, 2015. On

-23-

November 18, 2015, the first day of trial, the trial court denied King's motion for reconsideration, explaining that the requested amendment would be prejudicial to Mockovak.

There is no question here that King unduly delayed in attempting to add a personal claim for breach of fiduciary duty. King filed his answer and counterclaim, including a claim for breach of partnership, in August 2011—over four years prior to seeking to amend his counterclaim to add a breach of fiduciary duty claim based on the breach of partnership. King clearly caused undue delay. See Wallace v. Lewis County, 134 Wn. App. 1, 26, 137 P.3d 101 (2006) (waiting 18 months to attempt to amend a month before a scheduled summary judgment hearing was undue delay). But undue delay alone does not justify refusal to allow an amendment. Caruso, 100 Wn.2d at 349-50. Instead, "[t]he touchstone for denial of an amendment is the prejudice such amendment would cause the nonmoving party." Caruso, 100 Wn.2d at 350.

Mockovak argued below that it was unduly prejudicial to allow King's amendment just one month before trial, long after discovery cutoff, and long after the deadline for bringing motions for summary judgment. The trial court agreed. King asserts that Mockovak understood the emotional damages he was seeking, and that there was no basis for summary judgment. But King offers no explanation for attempting to insert a new cause of action into the proceedings after all pretrial deadlines had expired other than trying to resurrect a claim for emotional distress damages that the trial court had already rejected.[9]

---

[9] Contrary to King's assertions, there were likely grounds for Mockovak to seek dismissal on summary judgment. For example, the parties dispute as a matter of law, whether damages for emotional distress are recoverable in an action for breach of fiduciary duty due to breach of partnership agreement.

King's delay, and the attendant prejudice, far exceeds other situations where Washington courts have affirmed a trial court denying a late filed amendment. See, e.g., Wallace, 134 Wn. App. at 26 (no abuse of discretion for denying leave to amend where moving party was aware of the factual basis for the claim from the outset of the case and did not seek amendment until "a month before the scheduled summary judgment hearing and more than a year and a half after filing their initial complaint."); Del Guzzi Const. Co. Inc. v. Global Nw., Ltd, Inc., 105 Wn.2d 878, 888-98, 719 P.2d 120 (1986) (no abuse of discretion for denying leave to amend filed one week before summary judgment); Donald B. Murphy Contractors, Inc., v. King County, 112 Wn. App. 192, 199-200, 49 P.3d 912 (2002) (no abuse of discretion for denying motion to amend filed 10 days before summary judgment). Because the trial court based its decision upon prejudice, the "touchstone" for denial of an amendment, the trial court's decision was not a manifest abuse of discretion and the decision should not be disturbed on appeal. Del Guzzi, 105 Wn.2d at 888-89.

*Noncompete Agreement*

Mockovak argues that he was entitled to a $200,000 share of a $400,000 payment made to King for waiver of a noncompete agreement. We disagree.

In May 2008, Mockovak and King sold part of their business. The sale agreement included a noncompete provision that prohibited the buyers, LASIC MD, from competing with Mockovak and King's business in Victoria. In June 2011, while

---

Similarly, the parties dispute whether King's claims were barred by res judicata after the King family litigation was dismissed.

Mockovak was in prison, King agreed to waive the noncompete provision for $400,000. King kept the full payment of $400,000.

Mockovak sought recovery of a share of the $400,000 under theories of conversion, unjust enrichment, and conspiracy. The jury rejected Mockovak's theories. Mockovak moved to vacate the jury's verdict on his unjust enrichment claim under CR 59(a)(7), but the court denied this motion. Mockovak does not challenge the trial court's denial of his motion to vacate. Mockovak instead argues that he is contractually entitled to a share of the waiver payment. But Mockovak did not seek recovery on a contract theory below. We decline to review a claim not raised below. CR 2.5(a).

## CONCLUSION

We reverse in part and remand for (1) the trial court to enter findings determining the value of Mockovak's cancelled shares under RCW 23B.13.300 and (2) a new trial to determine the limited question of whether King is entitled to damages for the breach of partnership agreement. We otherwise affirm.

_Mann, J._

WE CONCUR:

_Trickey, ACJ_

_Spearman, J._

-26-